SEYMOUR OPERA HOUSE COMPANY V. CORNELIA R. THURSTON ET AL.

Delivered March 26, 1898.

1. **Usury—Charge of Court.**

An erroneous charge on the question of usury, where the facts do not warrant any charge on the issue, is harmless when the jury under a proper charge must have found no usury in the transaction.

2. **Same—How Computed.**

In determining whether usurious interest has been paid where the right to declare the debt due in case of default on the part of the maker of the note is contained in the contract, the time of maturity should be reckoned to the date fixed in the written contract, with grace added, unless it is waived, and not to the date on which the

maturity may be declared by the payee, when his option to declare the debt due is not a device to cover usury.

**3. Same—Innocent Purchaser.**

An innocent purchaser of negotiable paper for value is not chargeable with the receipt of usurious interest because the original payee did not promptly turn over to the maker the money received but made payment of it by installments.

**4. Charge of Court—Notice to Sue by Guarantor.**

The court's refusal to give a charge upon the defendant's plea setting up a release from liability as guarantor on a note because of the plaintiff's failure to bring suit on the note as required by statute can not be complained of where the notice to sue was given to one who neither owned the note nor was agent of the plaintiff.

**5. Same—Priority of Lien—Burden of Proof.**

An intervenor asserting the priority of his lien to all other parties to the suit can not complain of the court's failure to charge upon the burden of proof where the issue is as to which lien was prior or superior.

**6. Priority of Lien—Burden of Proof.**

The burden of proof is upon an intervener who asserts a lien prior to all other parties to the suit.

**7. Priority of Lien—Materialman and Mortgagee.**

The lien of a materialman is subordinate to that of a mortgage upon opera-house property where he was a stockholder and director of the company owning it and agreed to subordinate his lien to that of the mortgage, and did not dispute a statement to that effect made in his presence whereby guarantors were induced to sign the note secured by the mortgage.

Appeal from Baylor. Tried below before Hon. R. J. Browning.

*J. H. Glasgow, Stuart & Bell,* and *Davis & Garnet,* for appellant.

*D. K. Kenan,* for appellee.

HUNTER, Associate Justice.—This suit was brought in the District Court of Baylor County, February 19, 1896, by the appellee, Cornelia R. Thurston, as owner and holder, against the Seymour Opera House Company as maker, the Panhandle Loan and Trust Company as indorser, and S. Suttlemeyer, L. T. Wilson, P. Toberman, Joe Woodyear, J. C. Wooldridge, D. D. Wall, and J. T. Montgomery as guarantors, in which the appellee sought to recover judgment for the full amount of a promissory note for $4000, with interest and attorney's fees, and to foreclose a mortgage upon certain property in the town of Seymour known as the Seymour Opera House. The suit was, however, dismissed as to defendant L. T. Wilson, because not served with citation.

Wooldridge & Bro., a partnership composed of R. Wooldridge and J. C. Wooldridge, intervened in the cause on the 12th day of May, 1897, claiming a materialman's lien for $3066.80 for lumber and other material sold by said firm to said Seymour Opera House Company, and used in the construction of the opera house upon said land, which lien it was alleged was prior and superior to said mortgage lien. The defendant J. C. Wooldridge admitted the execution of the note and mortgage sued on, and pleaded that the note was usurious because it was given in consideration of the loan of money, and that interest at a higher rate than 12

per cent per annum was contracted for; and that after the plaintiff's right of action had accrued, he required her by notice in writing to forthwith institute suit upon said note, which she failed to do at either the first or second term of court thereafter, as provided by statute.

The defendants Montgomery and the Seymour Opera House Company, among other things, pleaded that the mortgage sued on was prior in right to the lien of Wooldridge & Bro. for material, for the reason that said J. C. Wooldridge was a stockholder and director in said Seymour Opera House Company when said mortgage was executed, and agreed that the mortgage should be prior in right, and waived his lien in favor of said mortgage.

The cause was tried July 3, 1897, before a jury, resulting in a verdict and judgment in favor of the plaintiff against all of the defendants for the full amount of the note, with interest, and foreclosing the mortgage lien and adjudging it to be prior to the lien of said Wooldridge & Bro. for material. From this judgment the defendant J. C. Wooldridge and the interveners Wooldridge & Bro. have prosecuted this appeal.

The record discloses the following facts:

On August 18, 1891, the Seymour Opera House Company executed its note and mortgage, payable to the order of the Panhandle Loan and Trust Company, for $4000, due July 1, 1896, without grace, dated at Wichita Falls, Texas, and payable there, with current rate of exchange on New York, bearing interest from its date until maturity at the rate of 8 per cent per annum, and after maturity at the rate of 12 per cent per annum; the interest from date until maturity payable semi-annually on the first days of January and July of each year, according to the terms of ten interest coupon notes thereto annexed, nine of which were for $160 each and one for $118.37, each bearing interest at the rate of 12 per cent per annum after maturity, payable to the Panhandle Loan and Trust Company or order, and indorsed by it in blank. The principal note above described provided for 12 per cent on the sum due as attorney's fees, in case it should be placed in the hands of an attorney for collection. It was further provided, that if any one of said coupons should remain unpaid for ten days after maturity, then, at the option of the legal holder of said note, the whole principal and interest then accrued should at once become due and payable, and the holder could proceed to collect the same by foreclosure suit.

The note was indorsed by the Panhandle Loan and Trust Company to Mrs. Cornelia R. Thurston. There was indorsed upon the note before delivery the following guaranty: "We guarantee prompt payment of the principal and interest of the within note, and waive demand, notice, and protest;" signed by the defendants Woodyear, Wooldridge, Wall, Wilson, Toberman, Montgomery, and Suttlemeyer.

All the interest coupons maturing prior to July 1, 1895, were paid, but because this one remained unpaid for ten days after maturity the plaintiff declared the entire debt to be due on July 15, 1895, and filed this suit on the $4000 bond and the said coupon note, claiming interest

thereon at 12 per cent from the day the notes were declared due, and also 12 per cent on the whole amount due for attorney's fees. The opera house company also gave a mortgage at the time the notes were given on their lots and opera house, to secure the payment of the debt, making John G. James trustee therein, and providing that the holder of the note should have the power to declare the debt due and foreclose the mortgage, if the maker should fail to keep the property insured. From about March, 1893, the property was not kept insured.

When these notes and mortgage were executed, it was known to all parties thereto that the Panhandle Loan and Trust Company had not the money they called for, but it was understood that the president of said company, John G. James, was to sell the bond and thus raise the funds desired. For this service it was agreed that he should retain a cash commission of $200, and the opera house company also executed to the Panhandle Loan and Trust Company a note of $400, in consideration of the loan of the money, due in installments of $100, payable each six months thereafter, beginning on January 1, 1892.

On September 18, 1891, James, through a broker, sold the bond to the plaintiff in Providence, Rhode Island, and received the sum of $4000 therefor, and on receipt of the money at Wichita Falls, on September 21, 1891, he retained the $200 commission as agreed on, and also $16 for interest from August 1st to the date of the bond, August 18, 1891, also $5.10 to cover the expenses of a trip on September 23, 1891, and paid to the opera house company the balance as follows: On September 24, 1891, $500; October 14, 1891, $1000; November 10, 1891, $1000; December 14, 1891, $1000; December 29, 1891, $200; February 10, 1892, $78.90. These sums of money were paid over to the opera house company by the Panhandle Loan and Trust Company as the opera house building progressed and as the opera house company called for them, the whole amount being deposited in a Wichita Falls bank to the credit of the Panhandle Loan and Trust Company. There was never any agreement that the $16 for interest from August 1st to August 18th should be charged or retained for the loan of the money. It seems that James, of his own motion, deducted this amount and furnished a statement of account to that effect, and it was acquiesced in by the opera house company, or at least no objection, it seems, was made to his retiring it. He had no right to do it, either by contract or otherwise, so far as the record discloses.

The defendant Wooldridge never knew that the note had been transferred, and believed that the Panhandle Loan and Trust Company was the owner thereof, and the opera house company failing to keep the mortgaged property insured as required, he, on December 15, 1893, gave John G. James notice in writing that he required suit to be brought immediately on the note. James paid no attention to the notice, and did not notify the plaintiff that he had received such notice. No suit was brought on the note until this one was filed in February, 1896. James was not the agent of plaintiff, and had no authority to receive such

notice, and was under no obligation to report such notice to the plaintiff, and had no power to act in the premises. He was trustee in the mortgage, with power of sale in case of default, and in case plaintiff should request him to sell.

Wooldridge & Bro., of Gainesville, Texas, a firm composed of J. C. Wooldridge and R. Wooldridge, furnished lumber and material to the opera house company to the value of $3066.80, which was used in the construction of said opera house building, which had never been paid for, and for which they have a materialman's lien on the said building and the lots upon which it is situated. J. C. Wooldridge was the business manager of the firm at Seymour, Texas, and was a stockholder and director of the opera house company, and there is evidence tending to prove that he agreed before the defendants Montgomery and Woodyear guaranteed the payment of said $4000 note, and before the Panhandle Loan and Trust Company would accept said note and mortgage, that the mortgage given to secure said note should be the first lien on the opera house and lots, and the said Panhandle Loan and Trust Company was thus induced to accept said note and mortgage and sell the same, and the said guarantors were thus induced to guarantee the payment of the said debt. The materialman's lien of Wooldridge & Bro. is by this agreement and understanding made secondary and inferior to the mortgage lien of the plaintiff.

The amount due on plaintiff's bond on July 3, 1897 (the date of the judgment), including attorney's fees as provided for in the note, was $5511.43; without attorney's fees, $4920.88.

The charge of the court on the question of usury is not correct, and appellants assign error thereon which would be sustained were we not clearly of opinion that the facts did not warrant any charge on the issue of usury; and as the jury under a proper charge must have found no usury in the contract, the error in the charge is harmless.

At the time this contract was made our Constitution and laws allowed parties to contract for 12 per cent interest, and our statute provided that, "All written contracts whatsoever which may in any way, directly or indirectly, violate the preceding article by stipulating for a greater rate of interest than 12 per cent per annum, shall be void and of no effect for the whole rate of interest only; but the principal sum of money or the value of the contract may be received and recovered." Rev. Stats. 1879, art. 2979. The preceding article referred to was as follows: "The parties to any written contract may agree to and stipulate for any rate of interest not exceeding 12 per cent per annum on the amount or value of the contract." Id., art. 2978.

Appellants asked the court to charge the jury to the effect that: "In order to determine whether more than 12 per cent per annum interest had been exacted, you should compute the interest on the sum of money actually paid to the Seymour Opera House Company from the time it was loaned up to the maturity of the bond sued on, and add to it the sum actually paid. You should then add to the $4000 bond the note for $400

and all the coupon interest notes up to the maturity of said bond, and if the sum of said $4000 bond and said $400 note and said coupon notes exceeds the sum actually paid to said Seymour Opera House Company and interest thereon at 12 per cent per annum as aforesaid, then the transaction would be illegal and usurious, and you should so find."

This we understand to be the correct rule, but in cases like this, where the right to declare the debt due, in case of default on the part of the maker of the note, is contained in the contract, the *time of maturity* should not be reckoned only to the day on which the maturity was afterwards declared, as contended for by appellant, but to the day fixed in the written contract in good faith for the maturity, with grace added, unless it is waived. This rule may sometimes result in requiring the maker to pay more for the use of money than the rate fixed and limited by law would permit, but it would be on account of the subsequent default of the maker, for which the holder of the note ought not to be held responsible, unless such provision was made as a device to cover usury.

The *time the money was loaned*, as recited in this rule, means the date of the contract, unless a future and different date is agreed on for the delivery of the money to the maker of the note, or unless the note is dated back by agreement, as a device, in either case, to cover usury. In this case it was known and understood that the Panhandle Loan and Trust Company had no money on hand at the time the note and mortgage were executed, and it was consequently agreed that it should take the security, and by sale of it raise the money desired. It was known that some indefinite time would be required for this purpose, and though the contract bore interest from August 18, 1891, the sale of it was not made until September 18, and the money not received by the Panhandle Loan and Trust Company until September 21, 1891.

It is true, it was not all then paid over to the opera house company, but the plaintiff in this case should not be affected in any manner by what occurred or did not occur between those two corporations, original parties to the note and mortgage, after she became the owner thereof. The rule which permits the secret or indirect contract or arrangement of the parties for usury to be established as a defense against negotiable paper in the hands of an innocent purchaser for value is harsh enough, without extending it to agreements and acts of the original parties made or performed after they had parted with the note for value. If it was not a usurious contract down to the time of the sale and delivery to Mrs. Thurston, no contract, arrangements, or acts of the original parties thereto between themselves could make it such afterwards. It would have made no difference in this case to Mrs. Thurston if James had refused to pay any part of the $4000 to the opera house company after he had sold the note. That would have been a matter for settlement between the Panhandle Loan and Trust Company and the opera house company only.

This view will also exclude from computation, as part of the sum

paid for the use of the money, the $16 which James held back for interest from August 1 to August 18, as it does not appear that there was any agreement to such effect prior to the sale of the note to the plaintiff, or, indeed, any such agreement made at any time.

Such being the rule of law in this case, a simple calculation and state-ment of account will show that the contract in question contained no usury. The account stands thus:

| | 1891. | Dr. | | |
|---|---|---|---|---|
| August | 18. | To cash . . . . . . . . . . . . . . . . . . . . . . | $4000 | 00 |
| September | 21. | Less 5 per cent to James . . . . . . . . | 200 | 00 |
| | | | $3800 | 00 |
| | | Interest at 12 per cent from August 18, 1891, to July 1, 1896, on $3800 . . . . . . . . . . . . . . . | 2220 | 80 |
| | | | $6020 | 80 |

| | 1891. | Cr. | | |
|---|---|---|---|---|
| August | 18. | By principal note . . . . . . . . . . . . . | $4000 | 00 |
| | | By one coupon . . . . . . . . . . . . . . . | 118 | 37 |
| | | By nine coupons . . . . . . . . . . . . . . | 1440 | 00 |
| | | By smaller note . . . . . . . . . . . . . . . | 400 | 00 |
| | | | $5958 | 37 |
| | | By amount to balance . . . . . . . . . . | 62 | 43 |
| | | | $6020 | 80 |

Showing that the opera house company, according to its agreement with the Panhandle Loan and Trust Company, lacked $62.43 of paying 12 per cent for the money it actually received, from the date of its note to the maturity thereof, July 1, 1896, four years, ten months, and thirteen days.

These views dispose of all the assignments of error relating to the question of usury, all of which we overrule.

The sixth assignment of error complains of the court's refusal to give a charge on defendant J. C. Wooldridge's plea setting up his release from liability as guarantor of the note, because of the plaintiff's failure to bring suit on the note as required by the statute, she having, as it was alleged, declared that the note matured prior to December, 1893, be-cause of failure on the part of the opera house company to keep the property insured. The court gave a charge on this issue, but it was not as full and accurate as was desired by appellants.

The evidence showed that Wooldridge had given notice to James to sue on the note, supposing that his company, the Panhandle Loan and Trust Company, still owned the note; but the plea alleges that James

was the agent of Mrs. Thurston, and also that she held him out as her agent, and that the notice to him was therefore good against her. There was no evidence tending to prove that James was her agent, nor any that she held him out as such. He was the trustee in the mortgage, but he was chosen as such by the opera house company, or at all events not by Mrs. Thurston, and besides, there is no evidence tending to prove that she had ever declared the note due at the time this notice was given. This privilege was optional with her. She could not be required to declare it due by any surety.

The statute provides: "Any person bound as surety upon any contract for the payment of money or the performance of any act when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract." Rev. Stats., art. 3811. By article 3819, guarantors are declared to be sureties within the meaning of article 3811. We therefore overrule the sixth assignment, because no charge was warranted by the evidence on this issue.

The pleadings, as well as the evidence, without dispute showed that both the plaintiff and Wooldridge & Bro. had liens on the opera house and the lots upon which it was situated. The only issue raised by them was whether Wooldridge & Bro. had agreed with the Panhandle Loan and Trust Company and with Montgomery and Woodyear, guarantors, that their lien should be subordinate and secondary to the mortgage lien of the plaintiff, or whether Wooldridge & Bro. were estopped from asserting an equal or prior lien as against Montgomery, Woodyear, and the Panhandle Loan and Trust Company. There was evidence on this issue tending to prove, in effect, that J. C. Wooldridge was the manager of Wooldridge & Bro.'s lumber business at Seymour, Texas; that he and probably his firm were stockholders, and he was a director in the opera house company; that he was present, as was Woodyear, at the meeting of the directors when the loan was agreed to and the note and mortgage executed; and that it was then and there understood by all parties that the loan should be the first lien on the property. Wooldridge, Woodyear, and some others of the directors and guarantors afterwards, on the same day, carried the note to Montgomery to secure his signature to the guaranty thereon, when Montgomery at first declined to sign it, saying there were already other liens upon the property, when the matter of its being the first lien was again discussed by all parties, and Montgomery was assured that the $4000 mortgage would be the first lien on the property, and he was thus and thereby induced to sign the guaranty, Wooldridge was present at this discussion and conversation, and did not dispute the statement nor object to it, but allowed it to go unquestioned.

The court instructed the jury on this issue as follows: "On the question of priority of lien, as raised between plaintiff and defendants Wooldridge & Bro., you will determine from the evidence whether or not one or both have a lien on the opera house property, and should you determine from the evidence that both plaintiff and defendants Wooldridge & Bro. have each a separate lien on said property, then and in that event

you will determine from the evidence which of said liens is prior and superior to the other, and all of these facts you will so find by your verdict. A lien may be waived by a verbal agreement or by silent acquiescence or by such other conduct as would lead other interested parties to believe such waiver was intended." This charge is objected to, because it does not inform the jury that interveners' lien was prior and superior to plaintiff's, unless it had been waived, but leaves the jury to determine the question of priority without anything to guide them.

Appellant requested the following charge, which was refused: "You will find for the interveners Wooldridge & Bro. on the question of priority of liens, unless the Seymour Opera House Company, plaintiff, and Montgomery and Woodyear, show by a preponderance of the testimony that J. C. Wooldridge, acting for Wooldridge & Bro., released or waived their lien in favor of Cornelia R. Thurston or the Panhandle Loan and Trust Company, and the burden of proof is upon Montgomery et al. to so show."

We think the charge given, in view of the pleadings and evidence, was sufficient. There was no error in refusing the one asked, because the interveners' pleading put them in the attitude of plaintiffs against all the parties to the suit, inasmuch as they came into the case asserting a lien prior to all other parties to the suit. The pleading in response to their plea of intervention denied the priority of their lien, and asserted the priority of the plaintiff's. The evidence as to the agreement and waiver was conflicting.

We think in such a case it would have been error in the court to have given the special charge asked, placing, as it did, the burden of proof on the defendants Seymour Opera House Company and Montgomery and Woodyear. We are more inclined to the opinion that the interveners, by their pleading and attitude in the case, held the affirmative of the issue, and logically the burden of proof. At all events the true issue was, which lien was prior and superior, and in such a case a failure to charge on the burden of proof would not be error of which the interveners could complain. Blum v. Strong, 71 Texas, 324.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.