Appellant's special charge No. 4 was also given as follows:

"You are instructed that you cannot convict the defendant in this case of a forgery of any of the checks introduced in evidence by the state other than the one set out in the indictment, and you cannot convict the defendant of passing any of the checks introduced in evidence by the state as forgeries other than the Moreland check copied in the indictment."

We think, considering the charge in connection with the verbal and written charges given, the jury could not have been misled in regard to the purpose for which, under the rulings of the court, they were authorized to use the evidence of collateral transactions; but to reverse on this contention, we think, would be violative of article 743, C. C. P., wherein it is declared that the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the accused, or unless it appears that he has not had a fair and impartial trial.

Such special charges as were refused, we think, were properly refused. One of them related to a matter fully covered by the court's charge, and the other touched a subject, in our opinion, not applicable to the case.

The motion is overruled.

━━━━━

SHEAR CO. v. HALL et al.   (No. 979.)

(Court of Civil Appeals of Texas. El Paso. Oct. 23, 1919. Rehearing Denied Nov. 13, 1919.)

1. USURY ⬦⟲42 — NOTE FOR PRINCIPAL AMOUNT WITH INTEREST NOT USURIOUS.

A note for $1,800, secured by deed of trust, bearing interest at 6½ per cent. per annum, payable annually, on principal until due, and 10 per cent. interest on principal and interest after due until paid, together with an interest installment note for $148.80, secured by second deed of trust, reciting that it bore interest at 10 per cent. per annum after due until paid, such second note representing the interest on the principal sum of $1,800, calculated at 1½ per cent. per annum for five years, the period of loan, *held* not usurious.

2. USURY ⬦⟲49 — INTEREST UPON INTEREST AFTER MATURITY.

A contract for the legal rate of interest during the time of forbearance, and for interest upon interest thereafter, is not usurious.

3. MORTGAGES ⬦⟲335—FORECLOSURE SALE ON ELECTION TO DECLARE WHOLE NOTE DUE NOT PREMATURE.

Where the holder of a note secured by deed of trust was authorized by the note on default of payment of installment to declare the whole obligation due, the trustee's sale of the land on election by the holder of the note to declare it due after default in payment of an installment was not premature.

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Suit by the Shear Company against J. A. Hall and others. From an adverse judgment, except that personal judgment against defendant Hall was rendered in its favor, plaintiff appeals. Affirmed.

Goodson & Nabors, of Comanche, for appellant.

Smith & Woodruff, of Comanche, for appellees.

WALTHALL, J. Appellant, plaintiff in the trial court, a corporation, brought this suit against J. A. Hall, W. D. Howell, J. P. Pettitt, and J. D. J. Foreman to cancel, set aside, and hold void, or voidable, a deed of trust to certain lands and a sale and deed growing out of the execution of the deed of trust, and to recover judgment on four certain promissory notes with .foreclosure of the vendor's lien provided in the notes and deed. The case was tried by the court without the aid of a jury, resulting in a judgment against appellant, except as to a personal judgment against Hall. The court did not specifically find and state the facts upon which his conclusion of law was based, but said there was no conflict in the evidence offered, and that "the whole pleadings of all the parties hereto will be a full and fair statement of the facts." We think we need not quote the pleadings, but believe the question presented on this appeal can be understood by a statement of such facts as are pleaded, and verified by the record and material to the issues presented.

### Findings of Facts.

On February 24, 1914, W. D. Howell and wife by warranty deed conveyed to J. A. Hall the 238 acres of land described in the petition, and as part consideration therefor Hall executed and delivered to Howell his 12 promissory notes, payable to Howell, each note and the deed expressing and retaining a vendor's lien on the land sold, and providing for interest payments at the rate of 8 per cent. per annum from date and attorney's fees, and providing that a failure to pay any one of the notes or any installment of interest when due should, at the election of the holder of the notes or any one of the notes, mature all of said notes. The deed was plac-

ed of record on the 30th day of March, 1914. Notes numbered from 1 to 10 were each for $300, note 11 was for $200, and note 12 was for $1,800. The entire series of the 12 notes were made payable on dates ranging from January 1, 1915, to January 1, 1921. Appellant was the owner and holder of the notes of the series numbered 7, 8, 9, and 10, and becoming due, respectively, Nos. 7 and 8 on January 1, 1918, and Nos. 9 and 10 on January 1, 1919. The interest and notes maturing not having been paid, and appellant having elected to declare the notes due, appellant's suit was brought against Hall for the amount due on said notes 7, 8, 9, and 10, principal, interest, and attorney's fees, and for judgment against Hall, Howell, Pettitt, and Foreman to foreclose the vendor's lien provided in the notes and deed against the 238 acres of land as a primary lien against the claim and estate of each of the appellees, and, further, in the nature of a direct action against Pettitt and Foreman to cancel and set aside a certain substitute trustees deed to said 238 acres of land executed by Eanes, substitute trustee, of date April 6, 1915, to Pettitt, and to cancel and hold for naught a certain deed of Pettitt, conveying to Foreman the said 238 acres of land, or, in the alternative, voidable as against the vendor's lien asserted by appellant; that appellant have an order of sale and its writ of possession.

The facts shown as to Pettitt and Foreman made the basis of controversy here are substantially as follows: On April 23, 1914, Hall and wife executed and delivered to Charles L. Cribs, as trustee, two deeds of trust on the said 238 acres of land, each of said deeds referring to the other, and each expressing a lien, one designated as trust deed No. 1, and securing the payment to the Middlesex Banking Company of an indebtedness of $1,800 and interest that might accrue thereon from the date of deed of trust No. 1, then owing by Hall and wife as evidenced by an obligation of that date, the deed of trust reciting that it was a first lien on said land. The other deed of trust, designated as deed of trust No. 2, recites that it was given to secure the payment to the Middlesex Banking Company of an interest coupon note for the principal sum of $148.80, executed by Hall and wife to the Middlesex Banking Company, payable by installments of $13.80, due November 1, 1914, $27 annually, thereafter, with interest thereon at the rate of 10 per cent. per annum after due until the principal note was paid, and providing for attorney's fees, and further providing that if default is made in the payment of any one of the installments of interest or principal, then all principal sums, with all arrearages of interest, should at the election of the holder of the obligation become at once due and payable, and further provided for the manner of distribution of the proceeds from the sale under the trust deed. The $148.80 note and the trust lien become the property of William A. Pettitt, son of appellee Pettitt. Hall failed to pay the installment of $13.80 due on November 1, 1914, and William A. Pettitt, the then holder and owner thereof, elected to mature the $148.80 note. Thereafter the substitute trustee, acting under the terms of the trust deed, duly advertised and sold the 238 acres of land on April 6, 1915, when appellee, Pettitt, became the purchaser at the substitute trustee sale. Pettitt sold the land to Foreman, who went into possession, and was in possession at the date of this suit.

Prior to the conveyance of Howell to Hall of the said 238 acres of land and the execution by Hall of said 12 notes, Hall owned a stock of goods at Energy in Comanche county, where said land is situated, and where Hall had conducted a mercantile business, and had become indebted to various parties including appellant. Hall was unable to pay said indebtedness, and was insolvent. Howell agreed to sell the said 238 acres of land to Hall on condition that Hall would let the said 12 purchase-money notes be applied in sufficient amount to satisfy Hall's creditors, including appellant, and on condition that the creditors would consent to the agreement, and agree that the $1,800 note, No. 12 in the series, be sold or cashed to the Middlesex Banking Company and the proceeds thereof be applied to the indebtedness of Hall, and the other notes of the series be made a second lien to that of the $1,800 note. The creditors of Hall, including appellant, did so agree, and agreed that the Middlesex Banking Company should take up said $1,800 note, and be evidenced by the later $1,800 obligation and the interest installment note of $148.80, and secured by the first and second deeds of trust, as above. Pursuant to said agreement, Howell executed the deed to Hall for the 238 acres of land; Hall executed to Howell the 12 notes, as agreed; Hall and wife executed to the Middlesex Banking Company the $1,800 obligation and the $148.80 installment of interest note; the Middlesex Banking Company advanced the $1,800 on the $1,800 note in the series; the money so advanced was distributed among the creditors of Hall, including appellant; the notes of said series by indorsement thereon were made to express a second and inferior lien to that of the banking company as to all indebtedness held by the banking company against Hall, evidenced by the notes and deeds of trust. Said serial notes Nos. 7, 8, 9, and 10 were by Howell indorsed without recourse and delivered and accepted in part satisfaction of appellant's claim against Hall, and accepted and acted upon by all other parties concerned. Appellant knew of and agreed to the form and manner of the execution of the notes and the deeds of trust, and sanctioned the making of them. Pettitt and Foreman, by separate answers, pleaded the above facts.

Howell filed a disclaimer. Hall, though cited, failed to appear or file an answer.

The trial court concluded as a matter of law that the two deeds of trust and the notes mentioned therein were contemporaneous with and constituted a part of one and the same transaction with that of the sale of the land and execution of the deed and the 12 serial notes; that the sale under the deeds of trust was not prematurely made; and that the contract under which the sale of the land was made was not usurious.

The judgment entered by the court was in favor of appellant against Hall for personal judgment for the amount found to be due on the four notes sued on, for attorney's fees, and costs of suit; judgment in favor of Howell, and judgment against appellant, denying the relief prayed for, and foreclosure sought against Pettitt and Foreman.

## Opinion.

Appellant presents six assignments of error all challenging the correctness of the court's conclusion of law that the $148.80 interest installment note, made the basis of the foreclosure and sale of the 238 acres of land by the substitute trustee, under the second deed of trust, was not usurious, and the sale was not prematurely made. We think we need determine only the questions of usury and premature foreclosure.

[1, 2] What is termed in the proceedings as the "first deed of trust" was dated April 27, 1914, by Hall and wife to the trustee to secure a promissory note in the sum of $1,800 in favor of the Middlesex Banking Company, due November 1, 1919, "bearing 6½ per cent. interest per annum, payable annually on principal until due, and 10 per cent. interest on principal and interest after due until paid," and reciting that the note is given in lieu and substitution of the $1,800 serial note, No. 12.

The interest installment note to secure which the "second deed of trust" was given recites in part:

"$148.80.      Dallas, Texas.    April 27th, 1914.

"For value received, we promise to pay to the Middlesex Banking Company * * * thirteen and 80/100 dollars on November 1, 1914; twenty-seven dollars on November 1, 1915; twenty-seven dollars on November 1, 1916; twenty-seven dollars on November 1, 1918; twenty-seven dollars on November 1, 1919, with interest thereon at the rate of ten per cent. per annum after due until paid. * * * It is hereby agreed, that if default is made in the payment of any one of the above installments, then all of the principal sums above specified with all arrearages of interest shall at the election of the holder hereof, become at once due and payable, such election to be made at any time after default and without notice. This note is given in lieu and substitution of one certain promissory note for the sum of eighteen hun-

dred dollars * * *" —and describing the serial note No. 12.

Default was made in the payment of the $13.80 installment. Pettitt, the then holder of the $148.80 note, elected to mature the whole note; the trustee duly foreclosed the trust deed and sold the land. As stated, the original loan was for $1,800, made April 27, 1914. The loan was made for five years. It was expressed in two notes. The original sum was evidenced by the $1,800 note bearing 6½ per cent. interest per annum, the principal due and payable in five years. This note was secured by the first deed of trust. The $148.80 note quoted above represents the interest on the principal sum loaned, calculated at 1½ per cent. interest per annum for five years, the whole period of the loan. This note was secured by the second deed of trust. It seems clear to us that, the principal note bearing interest at the rate of 6½ per cent. per annum, and the interest coupon $148.80 note, being interest on the $1,800 loan at 1½ per cent. interest per annum, the whole rate charged is 8 per cent. per annum. There is no agreement in either of the two notes to pay more than 8 per cent. per annum on the money actually loaned. The $148.80 is divided into the several payments as shown above. The first payment maturing is the only one providing for compounding the interest, and if the two notes taken together provided for the highest rate permitted by the statute, there would be, in that event, a slight excess above the highest rate allowed. But the interest provided in either or both of the notes as shown is less than the highest rate. Each of the other payments are due annually, and bear interest from maturity. A contract for the legal rate of interest during the time of forbearance, and for interest upon interest thereafter, is not usurious, because the contract contemplates a continuance of the debt after maturity only through the default of the debtor. When the debt falls due the creditor is as much entitled to his interest as to his principal, and if the parties have elected in good faith to provide for the default, and have agreed that after maturity the matured interest shall bear interest, it is a contract for interest upon the original principal. Crider et al. v. S. A. R. E. Bldg. & Loan Ass'n, 89 Tex. 599, 35 S. W. 1047. Appellant refers us to Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322. The case is not altogether in point. In that case the note provided for interest on the money loaned at the rate of 6 per cent. per annum, and further provided:

"This note is to draw interest from date at the rate of twelve per cent. per annum, if either principal or interest remains unpaid ten days after date. At the option of the legal holder, after any of said interest notes remain due and unpaid ten days the whole of the prin-

cipal and interest may be declared immediately due and payable."

The Supreme Court held that the rate of interest provided in the note as a penalty for the detention of the money, while deemed a penalty under the rule of the common law, is made interest under our statute, and as the rate agreed upon for the detention of the money after the maturity of the debt exceeded the 10 per cent. per annum, the contract was usurious. But we have no such provision in the contract here; no addition or increase of interest is provided for before default, and in case of default in the payment of interest or principal. The result for default is simply to mature the debt. True, the $1,800 note, as described in the deed of trust, provides for the payment of 10 per cent. interest on the principal and interest remaining unpaid after becoming due; the meaning evidently being not that the 10 per cent. provided for the detention of the money reverts back to the date of the making of the note, as is the express agreement in the Parks-Lubbock Case, but, as stated, all sums remaining unpaid after becoming due bears interest from the new due date at the agreed new rate. We construe the agreement for the rate of interest to be as stated in the face of the note before payment is due, and after payment is due the rate on amounts then due, and from and after the due date is 10 per cent. per annum. Such provision would not be a penalty under the rule of the common law, nor would the increased rate be usury under our statute. We think this view is sustained in Seymour Opera House Co. v. Thurston, 18 Tex. Civ. App. 417, 45 S. W. 815, and in which writ of error was denied by the Supreme Court. The facts of that case are similar to the facts here. We need not review the case. Our opinion is based entirely upon the contract itself to pay the interest, and not upon what the parties might have done in executing it.

[3] We think, under the facts appearing in the record, the trial court was not in error in holding that the trustee's sale of the land was not prematurely made. Default was made in the first payment falling due; the holder of the $148.80 note was authorized by the terms of the instrument, on default in payment, to declare the whole obligation due. The holder of the note, Pettitt, elected to and did declare the note due.

All of the assignments of error have been duly considered and are overruled.

Finding no error, the case is affirmed.

HIGGINS, J. (concurring). The facts material to a consideration of the questions presented by this appeal are as follows:

J. A. Hall executed and delivered to the Middlesex Banking Company his note in the sum of $1,800, payable to the order of said company, dated April 27, 1914, due November 1, 1919, bearing interest from date at 6½ per cent. per annum and 10 per cent. upon past due interest and upon the principal from maturity. This note was secured by deed of trust of even date with the note on 238 acres of land as described in the opinion of Justice WALTHALL.

On the same date Hall executed another note, payable to the order of said banking company agreeing to pay $13.80 on November 1, 1914, and an installment of $27 on the 1st day of November in the years 1915, 1916, 1917, 1918, and 1919. This note provided for 10 per cent. from maturity, and provided that if default was made in the payment of any installment when due, then all installments, at the election of the holder, should become due. This note was likewise secured by deed of trust on the 238 acres of land, but was subordinate to the other deed of trust. The aggregate of the installments of this note was $148.80. This note was assigned by the banking company, and, default having been made in the payment of the installment due November 1, 1914, the holder declared all installments due, and caused the land to be sold under the deed of trust which secured its payment.

The appellant is the holder of a lien upon the 238-acre tract of land; its lien being secondary to the deeds of trust above mentioned. This suit was by the appellant to set aside the foreclosure sale upon the theory that the notes in favor of the banking company were usurious, and that the sale was prematurely made before the maturity of the installment note. It is shown by the evidence that the installment note represented interest upon the $1,800 note at the rate of 1½ per cent. per annum from date, and was transferred by the banking company to the broker who negotiated the loan, as his brokerage compensation. It seems to me to be demonstrable that there is no usury in the transaction.

Suppose the entire $148.80 had been deducted from the principal of the $1,800 note at the time the loan was made and retained by the banking company as interest paid in advance. The borrower would thus have received $1,651.20. Interest at the rate of 10 per cent. per annum upon this amount from date of note to its maturity could have been paid at the intervals stated in the $1,800 note, and the transaction would not have been usurious. The total amount which would have been thus paid as interest would be $909.96.

According to the $1,800 note, interest at the rate of 6½ per cent. from its date to maturity upon the principal sum could be charged. This would amount to $644.80. To this add the installment interest note of $148.80, which makes $793.60. Thus the total interest on the note as actually drawn would amount

to $116.36, less ($909.96–$793.60) than what was permissible at 10 per cent. interest. Now if the $148.80 interest might have been paid in advance at the date of the loan without making the transaction usurious, manifestly its enforced payment at a subsequent date did not make it so. The installment note was fully matured at the date of foreclosure because the holder had exercised the option given by the accelerating maturity clause to mature all installments upon default in payment of the installment due November 1, 1914. The parties could lawfully make such an agreement, and, the note having been thus matured, the foreclosure was not premature.

Appellant assumes that the collection of the $148.80 note through the foreclosure constituted payment of interest far in excess of what might lawfully be collected for one year. But it was not payment of interest for only one year, but the payment of the 1½ per cent. interest, evidenced by the installment note from April 27, 1914, to November 1, 1919, on the $1,800 note. It covered that portion of the interest on such $1,800 note from its date to its maturity.

For the reason indicated, the transaction was not usurious, and the foreclosure was not premature. I, therefore, concur in the affirmance.