**SOUTHWESTERN INVESTMENT COMPANY, Appellant,**

v.

**HOCKLEY COUNTY SEED & DELINTING, INC., et al., Appellees.**

No. 8442.

Court of Civil Appeals of Texas, Amarillo.

June 3, 1974.

Rehearing Denied July 8, 1974.

Clayton & Clayton, Cleo G. Clayton, Jr., and Wesley G. Clayton, Amarillo, for appellant.

Walters & Associates, Reid A. Rector, Lubbock, for appellees.

ELLIS, Chief Justice.

In this appeal of a usury case arising out of a note executed on November 1, 1965, by Hockley County Seed & Delinting, Inc., et al., appellees, to Southwestern Investment Company, appellant, the appellant-lender challenges the judgment of the trial court awarding to appellees a recovery of double the amount of usurious interest found by the court to have been paid and received on such note, together with attorney's fees, pursuant to the provisions of Vernon's Ann.Civ.St. art. 5073.

Southwestern Investment Company instituted suit on July 18, 1968, against the appellees for unpaid principal and interest due on the note. The defendants in such suit, appellees herein, alleged defensively that the note sued upon was usurious and by counterclaim sought to recover certain statutory penalties.

The case was originally tried on May 28, 1970, and a judgment was entered by the 108th District Court of Potter County,

Texas, in favor of plaintiff Southwestern Investment Company, to the effect that Article 1302–2.09, Vernon's Ann.Civ.St., enacted in 1967, allowing interest in certain instances up to 18 per cent per annum, was controlling in determining the respective rights of the parties and that thereunder the transaction in question was not usurious.

The defendants, Hockley County Seed & Delinting, Inc., et al., appealed from such judgment. The cause was reversed and remanded by the appellate court on the grounds that Article 1302–2.09 should not be applied retroactively, and that the disposition of this case should be governed by the law as it existed in 1965 when the note was executed.

In reversing the judgment of the trial court, this court, in an opinion dated December 27, 1971, reported in 476 S.W.2d 38, writ ref'd n. r. e., stated:

"In view of our holding above, we reverse the judgment of the trial court; and for the reason that under the present state of the record we find insufficient evidence to enable us to determine all aspects of the judgment which should be rendered, we remand this cause for further proceedings to determine the rights of the parties in accordance with the provisions of Articles 5069, 5071 and 5073, as amended in 1963. Rule 434, Texas Rules of Civil Procedure."

Article 5069 declared that interest at a greater rate than 10 per cent per annum was usurious. Under Article 5071, a contract providing for interest greater than the established maximum legal rate of 10 per cent per annum was void as to the amount of interest only. The pertinent provisions of Article 5073, as amended in 1963, are:

"Within four (4) years after the time that a greater rate of interest than . . . ten per centum (10%) per annum, shall have been received or collect-

ed upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm, or corporation receiving the same and reasonable attorney's fees to be set by the court."

On May 9, 1973, further proceedings were had in the 108th District Court of Potter County to determine the rights of the parties in accordance with the provisions of Articles 5069, 5071 and 5073. Following a discussion between the court and counsel for the respective parties concerning the scope and extent of the remand, the court permitted and recognized the appellant's filing of additional pleadings, including Plaintiff's Third Amended Original Petition, containing a plea of unilateral mistake or error on plaintiff's part in the calculation of interest on the note resulting in a calculated interest rate of 10.7983% per annum rather than 10% per annum, as intended, and also pleaded for the relief of reformation whereby the note would conform to the true intent and purposes of the parties. It is further noted that in the Plaintiff's Third Amended Original Petition, filed March 6, 1973, appellant alleged that, although the installment payment due on the note as of January 21, 1968, was extended or postponed until April 21, 1968, by written agreement of the parties, the defendants subsequently defaulted and that, at the time of such default, there was due on such note the sum of $28,566.99, exclusive of interest.

In order to secure a release of all liens on the properties securing the note to enable the consummation of the sale of such properties, the appellees paid to appellant the total sum of $31,168.36, pursuant to the terms of the agreement between the parties, dated February 8, 1969, after the filing of suit, whereunder such total sum so paid was subject to subsequent application with respect to the note and without prejudice to the respective rights of the parties to this suit. In the appellant's Third Amended Original Petition, it was alleged

that out of the total amount so paid, the sum of $28,566.99 was owing on the principal of such note, and that the balance of the total payment was due to appellant for accrued and earned interest. Additionally, appellant alleged its entitlement to recover attorney's fees in the sum of $4,675.25, representing an amount equal to 15% of the total sum of the outstanding interest and principal due under the terms of the note at the time such payment was made.

On March 9, 1969, appellant, as cross defendant, filed its answer to the Cross-Action of Cross-Plaintiffs. In this connection, it is here noted that in the First Amended Counter Claim of Hockley County Seed & Delinting, Inc., et al., filed on May 25, 1970, prior to the first trial, the appellees herein alleged, among other matters, the following:

"Cross Plaintiffs are entitled to collect of and from the Cross Defendant not less than the total sum of $20,401.22, or alternatively, a sum of money representing twice the amount of interest paid within two years from date of institution of Cross Plaintiffs' cross action herein (on or about August 19, 1968). This cross action has been instituted for the purpose of recovering statutory penalty under Article 5073, V.A.C.S., as the same existed on or about November 1, 1965."

On March 22, 1973, the appellees filed Defendants' Third Amended Original Answer containing, among other pleas, various special exceptions to the plaintiff's pleadings. Also, on May 9, 1973, the appellees filed a separate Motion to Strike Pleadings, (Plaintiff's Third Amended Original Petition and the above mentioned Cross-Defendant's Answer to the Cross-Action of Cross-Plaintiffs, filed March 9, 1969) and to Restrict Proceedings. Also, on May 9, 1973, appellees filed a Motion In Limine wherein they requested the court to instruct appellant's counsel not to attempt to introduce evidence regarding the alleged unilateral mistake or relating to the appellant's subjective intent not to charge usurious interest on the grounds that a mistake by one of the parties to the contract is not sufficient to afford the relief of reformation of a contract.

The court overruled the appellees' exceptions to appellant's Third Amended Original Petition, the Motion to Strike as well as the Motion In Limine. The appellees were permitted to file a trial amendment to the effect that the appellant's plea in its Third Amended Original Petition for reformation of the note and documents executed in 1965 was barred by the two and four year statutes of limitations.

It was announced by the court and agreed by counsel for the parties that the entire record and everything that was offered in the first trial is "before the court in this Hearing without repeating it." Thus, in this non-jury hearing the court had before it all of the record, including the pleadings, evidence and stipulations of the first trial, together with the additional pleadings permitted to be filed by the respective parties and all evidence heard in the second proceeding pursuant to such pleadings.

We consider that the procedure followed by the trial court in connection with the remand of this cause was proper in all essential respects. The record of the first trial, together with the "further proceedings" had in this hearing, including the additional pleadings and evidence insofar as pertinent to the basic issue of usury within the contemplation of Articles 5069, 5071 and 5073, were sufficient to enable the court to make a determination of the rights of the litigants in accordance with the legally recognized guidelines established by such statutes.

After the completion of the hearing conducted in the manner above stated, the court entered its judgment and recited

therein, inter alia, certain findings, which are as follows:

"(A) That PLAINTIFF/CROSS-DEFENDANT, SOUTHWESTERN INVESTMENT COMPANY, as stipulated by the parties hereto, is entitled to recover, as attorneys fees, 15% of the principal that was due and owing on the promissory note in question as of July 18, 1968, the date SIC filed its original petition. The Court further finds that on such date, the sum of $28,566.99 (sic) was due and owing as principal. The Court further finds that 15% of $28,566.99 is $4,285.05;

"(B) That on November 1, 1965, DEFENDANT/CROSS - PLAINTIFFS executed a promissory note payable to PLAINTIFF/CROSS-DEFENDANT in the original principal sum of $41,000.00;

"(C) That on the actual cash advancement of $41,000.00, pursuant to the terms and conditions of the promissory note in question, DEFENDANTS/CROSS - PLAINTIFFS were required to repay to PLAINTIFF/CROSS-DEFENDANT and did repay the sum of $51,583.15, which sum included the original principal advancement of $41,000.-00 plus interest in the sum of $10,-583.15;

"(D) That pursuant to the terms and conditions of the promissory note in question, DEFENDANTS/CROSS-PLAINTIFFS were required to pay a rate of interest in excess of ten percent (10%) for at least one yearlv (sic) period during the life of the promissory note in question. The Court further finds that DEFENDANTS/CROSS-PLAINTIFFS paid interest in excess of ten percent (10%) for the following periods, to-wit:

(1) First six months of 1966—10.-933%

(2) Second six months of 1966—10.503%

(3) First six months of 1967—13.-8727%

(4) Precluding six months of 1968—10.9834%

"(E) That taking into consideration the terms of the note in question, the actual cash advance made by Cross-Defendant, SOUTHWESTERN INVESTMENT COMPANY to Cross-Plaintiffs, and the total period of time in which the total cash advance was agreed to be repaid, the note in question, when executed, constituted an agreement to pay more than ten (10%) per cent per annum, and thus was from date of execution, usurious and in violation of Articles 5069, 5071 and 5073, V.A.T.S., as the same existed on the date the promissory note in question was executed, and was therefore void as to all interest; that former Articles 5069, 5071 and 5073 as they existed on the date the promissory note in question was executed control the transaction in question; that Cross-Plaintiffs actually paid to Cross-Defendant, SOUTHWESTERN INVESTMENT COMPANY excess or usurious interest in at least one yearly period prior to instituting their counterclaim for statutory penalties;

"(F) That on August 15, 1968, DEFENDANTS/CROSS - PLAINTIFFS originally filed their counterclaim in which the contention of usury was first raised;

"(G) That by virtue of the usurious nature of the promissory note in question, DEFENDANTS/CROSS-PLAINTIFFS are, pursuant to Article 5073 V.A.T.S.,

entitled to recover from PLAINTIFF / CROSS-DEFENDANT twice the amount of money paid as interest in the period commencing two years prior to the filing of their counterclaim in which the contention of usury was first raised;

"(H) That between August 15, 1966, and August 15, 1968, the following sums were paid as interest on the promissory note in question by DEFENDANTS/CROSS-PLAINTIFFS, to wit:

(1) January 19, 1967   $1,752.10
(2) October 6, 1967    $2,135.97
(3) February 15, 1968  $1,083.90
(4) February 29, 1968  $  111.56

Further, the Court finds that said payments total the sum of $5,083.06 (correct total—$5,083.53);

"(I) That pursuant to the terms and provisions of Article 5073 V.A.T.S. DEFENDANTS/CROSS-PLAINTIFFS are entitled to recover of and from PLAINTIFF/CROSS-DEFENDANT the sum of $10,167.06;

"(J) That DEFENDANT/CROSS-PLAINTIFFS are entitled to recover of and from PLAINTIFF/CROSS-DEFENDANT reasonable attorneys' fees in the sum of $4,-000.00;

The decretal portion of the court's judgment, which is in accordance with the above quoted findings, awarded to the appellees recovery in the sum of $10,167.06 as the statutory penalty representing twice the amount of interest paid for the period of two years prior to the filing of their counterclaim in which the contention of usury was first raised. This sum is offset by attorney's fees awarded to appellant in the sum of $4,285.05, leaving the recovery against appellant as statutory penalties in the net sum of $5,882.01, and the additional sum of $4,000.00 representing reasonable attorney's fees awarded to appellees against appellant, together with 6% interest from date of judgment and all costs of court.

Pursuant to plaintiff's motion, the court filed separate findings of fact and conclusions of law substantially in accordance with the above quoted findings contained in the court's judgment. The appellant filed exceptions and objections to such findings. From the judgment entered, the appellant has brought its appeal upon 23 points of error.

Appellant's points one and two deal with the trial court's alleged improper restrictions and limitations upon the scope of the proceedings had in connection with this cause on the remand. Appellant contends that the court should have had a full re-trial of all matters necessary to determine the rights of the parties under Articles 5069, 5071 and 5073, but instead the court did not permit him to plead new matters or offer additional evidence not before the court at the original trial. However, appellant stated that wherein he complains of the failure of the trial court to allow him to "file amended pleadings" and "offer evidence" is not to be taken literally, but rather such complaints are to be construed that the court refused to give consideration to the amended pleadings and offered evidence. The court expressly permitted the filing of the appellant's amended pleadings and heard evidence regarding matters raised by the amended pleadings. The trial court specifically and expressly overruled appellees' exceptions contained in Defendants' Third Amended Original Answer, the Motion to Strike and the Motion in Limine. The appellant complained that the court erred in ignoring the import and effect of the amended pleadings offered. Although the appellant insists that a complete re-trial should have been held, since the appellant agreed that the record from

the original hearing in this cause was still before the court, it should not now be heard to complain regarding matters before the court in the previous trial. Further, we do not agree that it necessarily follows that the court's failure to make specific findings regarding appellant's additional pleadings and evidence is a valid criterion upon which to base the appellant's conclusion that the court did not give consideration to such additional pleadings and evidence.

The appellant further argues that when a case is tried on the wrong theory and is remanded for the parties to try their rights under a different theory, it would be futile for the court to so remand without the right to recast pleadings and introduce new evidence. This cause was not remanded because the case was tried upon the wrong theory, but because the court did not deem the evidence sufficient under the previous record submitted to determine the rights of the parties under the applicable statutes. The fact that the trial court, in carrying out its judicial function, did not see fit to make its decision in conformity with such additional pleadings and evidence submitted by the plaintiff cannot properly be construed as a failure to give consideration to such additional matters. Further, the appellant agreed that the record and evidence in the first trial was before the court and thus waived any error or complaint that the trial court erred in considering evidence adduced at the first trial. Appellant's points one and two are overruled.

In points three, four and five, appellant argues that since the note had been renewed and extended after the repeal of the 10% usury statute, and although the note provided for interest in excess of 10%, it was not usurious under the statute which had supplanted the former statute. An examination of the pleadings discloses that such matter was not pleaded or raised prior to this appeal. However, the rule is well established that the question as to whether a contract is usurious is to be determined as of the time of its inception. See 58 Tex.Jur.2d Usury § 8, p. 73 (1964); Seymour Opera House Co. v. Thurston, 18 Tex.Civ.App. 417, 45 S.W. 815 (1898, writ ref'd). Further, it has been held that removal of the taint of usury cannot be accomplished by a renewal of an original usurious contract. Wallace v. D. H. Scott & Son, 133 Tex. 293, 127 S.W.2d 447 (1939); First Nat. Bank of Montague v. Waybourn, 81 Tex. 57, 16 S. W. 554 (1891); Hewitt v. Citizens Sav. Bank & Trust Co., 119 S.W.2d 1073 (Tex. Civ.App.—Austin 1937, writ dism'd jdgmt corr.). Also, under the "Lien Extension Agreement" in the instant case, no new promissory note was executed or no new debt was created. The agreement was for the purpose of extending the due dates for certain installments due under the existing indebtedness, evidenced by the note executed on November 1, 1965, and in no way created a new indebtedness. See Minkert v. Minkert, 263 S.W. 648 (Tex.Civ.App.— Texarkana 1924, no writ). Further, if the original transaction is tainted with usury, that vice will follow the debt based on usury in whatever form it may assume. Burton v. Stayner, 182 S.W. 394 (Tex.Civ. App.—San Antonio 1916, writ ref'd). It is our opinion that the question of usury must be determined under the law in effect on the date the note in question was originally executed, and the lien extension agreement made after the supplanting of Article 5073 with another statute permitting a higher rate of interest without being regarded as usurious does not operate to alter the basic principle upon which we grounded our previous holding that the disposition of this case is controlled by the provisions of Articles 5069, 5071 and 5073 as they existed when the note was executed. Appellant's points three, four and five are overruled.

In appellant's sixth point, it contends that the loan contract taken as a whole did not by its positive and express terms obligate the appellees to pay and authorize ap-

pellant to charge and receive a rate of interest in excess of 10% per annum. In this connection, appellant argues that under the testimony and evidence presented by its witness, Dan Lynch, appellees did not pay interest in excess of 10% over the life of the loan as actually paid, and that appellees actually paid to appellant over the life of the loan interest equivalent to the percentage rate of 9.66% per annum.

We point out that usury does not depend on the question as to whether the lender actually receives more than the legal rate, for it is the agreement to exact and pay usurious interest and not the performance of the agreement that renders it usurious. 58 Tex.Jur.2d Usury § 8, p. 72 (1964) and cases cited. Further, a loan contract is considered usurious if for the first year or first few years it requires the payment of more than the lawful rate, even though the interest calculated over the entire loan period does not exceed the statutory limit. Dallas Trust & Savings Bank v. Brashear, 65 S.W.2d 288 (Tex.Comm'n App.1933); Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531 (1940); 58 Tex.Jur.2d Usury § 19, p. 86 (1964). In 91 C.J.S. Usury § 28a, p. 603 (1955), it is stated, ". . . (I)f any particular part of the [loan contract] period is in effect treated separately by the parties and excessive interest for such part of the period is exacted, the contract is usurious, even though the interest payable in other parts of the period is such that the average rate for the whole term does not exceed the lawful maximum." The early case of Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S.W. 860, 64 S.W. 778 (1901), declares the well established rule:

"To determine the question of usury in a contract, it must be tried by the statutory limitation of 10 per cent per annum for the use, forbearance, or detention of the money for one year. If the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed."

The above language is quoted and the rule recognized in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11 (1930). See also Leach v. Reserve Realty Co., 70 S.W.2d 273 (Tex.Civ.App.—Fort Worth 1934, writ ref'd); Jennings v. Texas Farmers Mortg. Co., 124 Tex. 593, 80 S.W.2d 931 (1935). When these principles are applied to the instant case, the evidence shows that the borrower paid in excess of the legal rate of 10% per annum for the use of money in the year of 1966 and for a six month period in each of the years of 1967 and 1968. Therefore, since the loan contract obligated them to make such payments, the contract is regarded as usurious, even though the total amount actually paid during the total period of the loan may have been less than 10% per annum. We overrule appellant's sixth point.

Appellant's points seven, eight and nine assert there is no evidence as well as insufficient evidence to support the trial court's finding that the appellees paid usurious interest on the loan transaction, and that such finding is against the great weight and preponderance of the evidence. The trial court made the finding, hereinabove quoted, to the effect that taking into consideration the term of the note in question, the actual cash advance made by the lender to the borrower, and the total period of time in which the total cash advance was agreed to be repaid, the note, when executed, constituted an agreement to pay more than 10% per annum, and thus was from the date of its execution, usurious and in violation of Articles 5069, 5071 and 5073, as the same existed on the date the note was executed. This finding is supported by the testimony of appellees' witness, Marilyn Phelan, who testified that the effective rate of interest on the note was 10.7983%, when taking into consideration the actual cash advance, the total amount required to be repaid and the schedule of payments under the terms of the note when executed. Also, it is noted that the heading of appellant's Exhibit No.

21, containing various calculations of appellant's witness, Dan Lynch, designates and identifies the note under consideration as being a note with "Original Advance—$41,000," "Date of note—11–1–65" and "Annual Interest Rate—10.7983%." Also, Mrs. Phelan gave additional testimony as reflected in the court's findings with respect to the amount of interest paid for specific periods, which interest, in the light of the authorities hereinabove cited, is clearly usurious and thus taints the whole contract with usury, regardless of whether the total rate of interest actually paid on the note did not exceed 10% per annum. Further, the question of whether a contract is usurious is to be determined as of the time of its inception. Seymour Opera House Co. v. Thurston, supra. In view of the foregoing, we hold that the record, including the stipulations made by the parties, setting out the specific percentages of interest calculated for each of the separate periods of payment thereof, all as recited in the above quoted findings contained in the court's judgment, contains adequate evidentiary support for the finding by the court that the contract was usurious. Points seven, eight and nine are overruled.

■ In points ten, eleven and twelve, appellant contends that the trial court erred in holding that its pleadings of unilateral and mutual mistake and seeking the relief of reformation of the loan contract were barred by limitations. We find no indication in the record that the trial court rejected or refused to consider such pleadings of the appellant on the grounds that they were barred by the statutes of limitations. Apparently, the court in rendering its judgment found no legal or factual basis in the record for entering a judgment for appellant on the grounds of unilateral or mutual mistake or that the relief of reformation was available to appellant under the facts and circumstances shown in this case. We find no grounds upon which to sustain the appellant's points ten, eleven and twelve, and thus such points are overruled.

In appellant's points thirteen, fourteen fifteen and sixteen, it contends that the trial court erred in rejecting parol evidence of certain witnesses regarding mistake in calculation of the interest included in the face of the note so as to explain that such mistake did not conform with the intent and agreement of the parties. This evidence was offered in connection with appellant's plea regarding mistake in reducing the agreement to a written contract and to explain inconsistencies contained in the loan contract. Closely related to such points concerning the alleged intent of the parties in connection with this transaction are appellant's points seventeen, eighteen, nineteen and twenty, wherein it is contended that the court erred in holding that the contract expressed the common intent of the parties that interest thereon should exceed 10% per annum. Also, in this connection, appellant asserts there is no evidence and that the evidence is insufficient to support the trial court's finding that the written contract expressed the common intent of the parties that the interest thereon should exceed 10% per annum, and that such finding is against the great weight and preponderance of the evidence.

■ The rule is well established that extrinsic evidence of intent is admissible only in situations in which the instrument in question is ambiguous on its face. In this case whereby the ascertainment of the agreed rate of interest is purely a matter of mathematics, it is our opinion that this note, although it does expressly state the rate of interest to be charged, would be regarded as a note usurious on its face. See Ustick v. Jones, 130 Tex. 620, 112 S.W.2d 703 (1938). The appellant contends that the note and deed of trust securing it should be construed together as one contract, and since the deed of trust contains a savings clause providing that nothing therein or in the note shall ever entitle the beneficiary to collect interest in excess of 10% per annum on the principal indebtedness, and in no event shall the grantor (borrower) be obligated to

pay interest thereon in excess of such rate, the note, as a part of the contract, should be construed as not being intended to be usurious. In the case of Terry v. Teachworth, 431 S.W.2d 918 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), the court found that the note was usurious on its face and that the savings clause could not save the transaction from the taint of usury. In this case the court stated:

". . . (A)ppellants cannot charge usurious interest and then escape the penalties by disclaiming an intention to do what they had plainly done."

Also, in the case of Ustick v. Jones, supra, in considering a note which did not set out its rate of interest, the court stated:

"Whether the rate was stated in terms or was purposely omitted is immaterial so far as the question of usury is concerned, since under our usury statutes and settled legal principles applicable to the law of contracts the problem of ascertaining the agreed rate is purely one of mathematics. . . ."

It is well established that the intent of the parties is presumed to be reflected in the note itself, and that the subjective intent of the parties is immaterial. Sledge v. Murphy, 284 S.W.2d 938 (Tex.Civ.App.— Waco 1955, no writ). In the case of Kollman v. Hunnicutt, 385 S.W.2d 600 (Tex. Civ.App.—Fort Worth 1964, no writ), wherein both plaintiff and defendant disclaimed any intent to pay usurious interest, the court held that "oral evidence given in denial of such intent is without force in the face of proven contractual provisions, the necessary effect of which provides for usurious interest."

In support of its contention on the intent question, the appellant cites the case of Guetersloh v. C. I. T. Corporation, 451 S. W.2d 759 (Tex.Civ.App.—Amarillo 1970, writ ref'd n. r. e.). However, in that case the court pointed out that where both the maker and payee of the note intended that interest on the note would be at a nonusurious rate, and the usurious rate actually charged was the result of an honest mistake in calculating the interest, it was not error for the court to reform the note to correct the error. We believe this case is clearly distinguishable in that the court here did not find that the evidence supported a conclusion that the interest actually charged was purely a mistake in calculation.

The cases cited by appellant regarding the admissibility of extrinsic evidence dealt with either ambiguities or uncertainties with respect to the meaning or effect of an instrument. We think the instant case is distinguishable in that there is no such uncertainty as to the terms or meaning of the instrument in question since the note by its terms is clearly usurious.

■ The weight and credibility of the evidence submitted and all reasonable inferences therefrom is a matter for determination by the trial court. From a review of this record, we do not believe the court erred in its finding that the contract was usurious, and it is our opinion that there is adequate evidentiary support for such finding as demonstrated by the testimony, exhibits and stipulations. Points fourteen through twenty are overruled.

■ In appellant's point twenty-one it contends that the court erred in refusing to reform the written contract to the contractual intents of the parties. In view of our discussion of the preceding points, we do not deem it necessary to discuss this point in detail. The testimony of appellant's witness Max Walden regarding the agreement of the parties as to the rate of interest intended to be charged was admitted by the trial court. Also, the testimony of James Beason concerning his alleged mistake in calculating the interest was admitted, and it appears that this testimony at most shows a unilateral error and thus does not support appellant's reformation plea. The weight and credibility of this

testimony was for the court's determination and apparently the court opted not to follow this evidence. Further, the appellant relies upon the case of Guetersloh v. C. I. T. Corporation, supra, in support of its plea of reformation. However, the relief of reformation in such case was based upon mutual mistake. In the instant case mutual mistake has not been established by pleading or proof. Thus, it is our opinion that the Guetersloh case would not be controlling here. In view of the foregoing, we overrule appellant's point twenty-one.

 In appellant's point twenty-two it is contended that the trial court erred in failing to award appellant attorney's fees in an amount equivalent to 15% of $31,168.36 because of the stipulations of the parties. The record discloses that the stipulation in this regard was that the appellant's attorney's fees would be based upon the sum of $31,168.36 if it were found that the note was not usurious. It was further stipulated that if the court found the note in question was usurious, the appellant's recovery of attorney's fees would be based upon 15% of the amount of principal owing at the time of the suit. The record shows that appellant introduced into evidence calculations which show that on the date of the suit the sum of $28,566.99 was due as principal. Further, such sum of $28,566.99 is mentioned in appellant's Third Amended Original Petition as the amount due on principal at the time of the agreement of the parties concerning the payment made by the appellees to secure the release of the liens on the property. The sum of $4,285.05 awarded to appellant as attorney's fees is 15% of the outstanding principal sum of $28,566.99. Appellant's point twenty-two is overruled.

 In appellant's point twenty-three, it contends that the trial court erred in entering judgment against the appellant for attorney's fees in the amount of $4,000.00 because appellees were not entitled thereto as a matter of law. In view of our discussion concerning the existence of a usurious transaction, it is our opinion that the appellees would be entitled to recover reasonable attorney's fees, as found by the court, under Article 5073. The finding that the transaction was usurious entitles the appellees to recover twice the amount of usurious interest paid, as well as the sum found by the court as reasonable attorney's fees. Appellant's point twenty-three is overruled.

For the reasons above stated, the judgment of the trial court is affirmed.

ROBINSON, J., not sitting.