. RIVERDRIVE MALL, INC., Appellant,

v.

LARWIN MORTGAGE INVESTORS et al.,
Appellees.

Nos. 15356, 15359.

Court of Civil Appeals of Texas,
San Antonio.

Oct. 9, 1974.

Rehearing Denied Nov. 6, 1974.

See also, Tex.Civ.App., 515 S.W.2d 2.

Hall & Zaffirini, Laredo, for appellant.

Stephen Philbin, John L. Estes, Locke, Purnell, Boren, Laney & Neely, Dallas, Robert O'Conor, Jr., Laredo, for appellees.

BARROW, Chief Justice.

This is an appeal from an order denying appellant's application for a temporary injunction to enjoin foreclosure of a deed of trust lien on a large shopping center under construction in Laredo. Appellant concedes that the notes which are secured by deeds of trust are in default, but asks to restrain foreclosure pending final judgment in its suit for damages based on usurious interest allegedly charged and economic duress allegedly exerted by said lender.

On August 10, 1971, Larwin Mortgage Investors, a California real estate investment trust, issued its loan commitment whereby it agreed to make an interim construction loan in an amount not exceeding $8,000,000.00 to Riverdrive Mall, Inc. payable in 36 months from date of recordation of the deed of trust with interest at four percent over the prime daily interest rate charged by Bank of America. On August 16, 1971, this commitment was modified to provide for interest at the rate of six percent over prime. This modified loan commitment was accepted by appellant. On December 10, 1971, said loan was closed, and the legal documents in support thereof were executed.

Riverdrive signed a promissory note in the principal sum of $8,000,000.00 payable with interest computed from the date of each advance by Larwin at the rate of six percent over prime. Interest only was payable each month with the note payable on December 1, 1974, provided that at the option of Riverdrive, and upon its compliance with certain conditions contained in the August 10th loan commitment, payment of the principal could be extended until December 1, 1976. This note was secured by deeds of trust executed by Riverdrive and the lessors of the property on which the shopping center was to be constructed. On the same date, Riverdrive entered into a construction contract with Herman J. Smith, General Contractors, Inc., whereby Smith agreed to construct the center on a cost plus contract. Highlands Insurance Company issued payment and performance bonds to secure the performance by Smith.

On October 3, 1972, Larwin agreed to loan Riverdrive an additional $1,000,000.00, which was evidenced by a promissory note executed upon the same terms as the original note and secured by deeds of trust upon the property. Inflation caused a rise in construction costs, as did certain modifications in the preliminary plans, and by November, 1973, the project was in serious financial trouble. At this time a tentative agreement was had between the contractor, bonding company, Riverdrive and Larwin, the exact terms of which are not in this record. However, as a part of this agreement, Larwin proposed an additional loan to Riverdrive of $1,160,000.00, with the sum of $560,000.00 being evidenced by a promissory note from Riverdrive to Larwin in payment of "loan fees" agreed to by Riverdrive in connection with the original loan commitment. This proposal was not accepted by Riverdrive, and, therefore, the promissory note for $560,000.00 was never executed.

The work on the project stopped completely on January 24, 1974, with the shopping center approximately 75 percent completed. More specifically, nine of the proposed 58 tenants are now in possession, although some of the nine tenants had to finish the work on their space. Of these nine, only one tenant is now paying any rent to Riverdrive. Two proposed tenants have backed out and others have asked Riverdrive to be released because of the delay in completing the center. There has also been some vandalism on the property.

Under the terms of the loan agreement, $800,000.00 of the original loan was held by Larwin as escrow interest, and this sum was exhausted by January, 1974. Since

that time there have been no interest payments made by Riverdrive, and the notes have been in default. After unsuccessful attempts to negotiate the matter, Larwin asked the trustees to foreclose on the deeds of trust. Notice was issued pursuant thereto and the trustee's sale set for July 10, 1974. In the meantime, Riverdrive filed suit in the 111th Judicial District Court of Webb County seeking in excess of $17,000,000.00 damages from Larwin for usurious interest and economic coercion and duress. Riverdrive also asserted claims against the Smith Construction Company and its bonding company for failure to properly perform the construction contract. In connection with the suit against Larwin, Riverdrive sought a temporary injunction to enjoin the trustees and Larwin from selling the property pending final determination of this suit. The trial court granted temporary relief pending a hearing, and the July 10th sale was enjoined. A hearing was held and on July 16, 1974, an order was entered denying Riverdrive's application for interlocutory relief. Riverdrive perfected an appeal from such denial, and we have enjoined the sale pending determination of this appeal.

■ The applicable rule for appellate review of an order granting or denying a temporary injunction was recently restated by the Supreme Court in Manning v. Wieser, 474 S.W.2d 448 (Tex.1971), as follows: "The decision of the trial court in either granting or refusing the temporary injunction will not be reversed upon appeal unless it is determined that the trial court has been guilty of abuse of discretion or has failed to apply the law correctly to undisputed facts. (citing authorities)."

■ Riverdrive urges by its two assignments of error that the trial court abused its discretion in denying the temporary injunction. Riverdrive's first point, which was the basis of the hearing in the trial court, complains of the denial of interlocutory relief upon its claim of usury. The second point asserts that Larwin waived the priority of its deed of trust liens over any mechanic and materialman's liens. This point was not pleaded or urged in the trial court and, therefore, we do not consider it as properly raised. In any event, no other liens are involved in this proceeding, and the point is without merit.

Riverdrive is a Texas corporation and can be lawfully charged a rate of interest not to exceed one and one-half percent per month on this loan. See Art. 1302–2.09, Vernon's Tex.Rev.Civ.Stat.Ann. (Supp. 1973). It asserts on this appeal that the testimony of Mr. Elliott, vice-president of Larwin, establishes that interest at a rate in excess of 18 percent per annum was charged and actually collected on the loan so as to entitle Riverdrive to recover the statutory penalty of twice the amount of interest contracted for, charged or received plus reasonable attorney's fees. Mr. Elliott testified that total interest on the notes at the maximum rate of 18 percent per annum would be $1,644,006.17, whereas Larwin actually charged a total of $1,367,051.-95 and collected $1,091,186.79. Mr. Elliott's calculations do not include the sum of $560,000.00 for "loan fees," $280,000.00 of which Riverdrive agreed to pay on December 1, 1973, and on December 1, 1974, under the loan commitment modification of December 10, 1971. It is seen that if said sum of $560,000.00 is included in the interest total, Riverdrive's claim of usurious interest is established.

Neither of these $280,000.00 payments was actually made by Riverdrive or debited against Riverdrive's account by Larwin. The 1967 Usury Act[1] of the Texas Legislature added the term "contracts for," and therefore, it is probably immaterial that the sums were not actually paid by Riverdrive. Larwin contends on this appeal that said sums were not collected and that the interest on the notes is not usurious be-

1. Art. 5069–1.06 provides in part: "(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, . . .."

cause of the "savings clause" in each of the notes and deeds of trust. This clause [2] provides in very broad terms that in no event will interest in excess of the highest lawful rate be charged, and further, that, if through some circumstance the holder of the note or deed of trust should receive an illegal amount, the amount received in excess of the lawful rate would be credited to payment of the principal and not to interest.[3]

In Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046 (1937), the Supreme Court considered a provision expressing the intention of the parties to reduce the interest to an amount allowed under the usury laws. It was held that where the principal had been matured by default after one year, the savings clause operated to reduce the amount of interest to an amount that, added to a front end fee of $320.00, would not amount to interest in excess of 10 percent per annum. The Court added this admonition: " . . . we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done." See also Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc., 511 S.W.2d 724 (Tex.Civ.App.— Amarillo 1974, writ filed); Terry v. Teachworth, 431 S.W.2d 918 (Tex.Civ.App.— Houston [14th Dist.] 1968, writ ref'd n. r. e.).

Riverdrive asserts as a second proposition that interest in an amount more than double the legal rate was charged and collected the first year of the note when the "loan fee" of $239,000.00 paid Larwin concurrently with the closing of the loan is added to the interest paid during the first year. Larwin does not here question the rule that a closing fee not representing any specific, identifiable service rendered to the borrower is charged by the lender for the use, forbearance or detention of money and is to be considered as interest. See Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942); Lafferty v. A. E. M. Developers and Builders Co., 483 S.W.2d 279 (Tex. Civ.App.—San Antonio 1972, writ ref'd n. r. e.). Larwin urges, however, that this front end fee was partial consideration for its agreement to loan up to $8,000,000.00, and it should be spread over the entire loan period and not just applied to the amount of principal advanced to Riverdrive during that first year.

In Nevels v. Harris, supra, the Supreme Court determined that a front end loan fee of $320.00 was interest, but held it not to result in usurious interest when the con-

2. "All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance hereof, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of the money to be advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or the deed of trust securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstance the holder shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof."

3. The need for a savings clause is illustrated by the fact that prime interest as defined in the notes rose from four and one-half percent in August, 1971, to nine and three-fourths percent per annum by January, 1974.

tract was considered as a five-year term. This rule was followed by the Court of Appeals for the Fifth Circuit in rejecting a claim of usury under Texas law on a large construction loan where a front end fee had been paid at the time of closing. Imperial Corp. of America v. Frenchman's Creek Corp., 453 F.2d 1338 (1972). See also Continental Assurance Co. v. Gibner, 119 S.W.2d 588 (Tex.Civ.App.—Amarillo 1938, writ dism'd). On the other hand, it has been held that a lender may not charge 11 percent for the first five years and nine percent for the second five years and claim that the total loan is at the legal rate of 10 percent. See Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531 (1940, opinion adopted); Terry v. Teachworth, supra; Loiseaux, Some Usury Problems in Commercial Lending, 49 Texas L.Rev. 419, 424–426 (1971).

■ It is not necessary for us to determine on this interlocutory appeal if usurious interest was "contracted, charged or received" by Larwin, in that we cannot say that the trial court abused its discretion in refusing to enjoin the foreclosure sale even if the interest on the notes was shown to be usurious. We, therefore, reserve these pivotal questions until full development of the case is had.

The 1967 Usury Act does not provide that a usurious contract is void as did the previous statutes. Thus, the validity of the notes is not in question; and Riverdrive, in any event, would owe all but the first year's principal. Riverdrive concedes that the notes are in default and that it has no funds to discharge this multimillion dollar indebtedness. Although Riverdrive alleged in the petition filed herein that it was willing to tender the principal owed Larwin, the record clearly supports a conclusion that it is financially unable to do so. Cf. Yonack v. Emery, 13 S.W.2d 667 (Tex. Comm'n, App.1929, jdgmt adopted). Riverdrive has been unsuccessfully trying to refinance the project for several months. At oral argument, Riverdrive's attorney stated that the tight money market prevented Riverdrive from securing another loan.

The record establishes the project has been stalemated since January, 1974, and it would remain so under a temporary injunction. It is imperative for all parties that the shopping center be completed as expeditiously as possible. Mr. Elliott testified that Larwin would attempt to bid in the property at the foreclosure sale, and if successful, would immediately complete the shopping center. This will not prejudice Riverdrive's claims for damages against Larwin. Thus, relief for the matters complained of by Riverdrive may be had at the trial on the merits. Stroud v. Town of Pecos City, 391 S.W.2d 805 (Tex.Civ.App.— El Paso 1965, writ ref'd n. r. e.).

We cannot say from the record before us that the trial court abused its discretion in denying the temporary injunction. We, therefore, affirm the order of the trial court.

The judgment is affirmed.