**TANNER DEVELOPMENT COMPANY et al., Petitioners,**

v.

**Robert B. FERGUSON et al., Respondents.**

No. B–6366.

Supreme Court of Texas.

Oct. 19, 1977.

Rehearing Denied Dec. 7, 1977.

Vinson, Elkins, Searls, Connally & Smith, Paul E. Stallings and David T. Harvin, Houston, for petitioners.

Sears & Burns, David F. Beale, Houston, for respondents.

DANIEL, Justice.

This is a suit seeking to recover the statutory penalties on a contract alleged to be usurious. Respondents, Robert B. Ferguson and Twelve Ferguson Ltd., a partnership, hereinafter referred to as Ferguson, brought suit against Tanner Development Company, a joint venture, asserting that a promissory note given by Ferguson to Tanner as partial consideration for the conveyance of ten acres of land in Harris County was usurious. Ferguson sought recovery of usury penalties, interest and attorney's fees in excess of $290,000, and prayed for an injunction prohibiting a trustee's sale of the property. Tanner filed a counterclaim in which it sought judgment declaring that the note was in default; that a valid lien pursuant to a deed of trust executed by Ferguson existed on the property; and that the lien be foreclosed and the property be sold.

Trial was before the court. Judgment was rendered for Tanner Development Company, the trial court holding that the note was not usurious but was in default and that Tanner was entitled to have the lien foreclosed on the property.

The Court of Civil Appeals reversed and rendered. It held that the contract was usurious; that Ferguson should recover $202,865.74 (figured as twice the amount of interest contracted for) plus $59,144.04, which it figured to be the interest already paid to Tanner under the terms of the note. The Court of Civil Appeals also awarded attorney's fees to Ferguson in the sum of $28,000 and reversed the trial court's judgment of foreclosure for Tanner. 541 S.W.2d 483. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

On November 8, 1973, Tanner conveyed to Ferguson approximately ten acres of unimproved land in Harris County. In consideration, Ferguson paid $6,000 in cash as a down payment and executed a note payable over a five-year period in the principal sum of $226,388.77 with interest at nine and one-half percent (9½%) per annum, secured by a vendor's lien and deed of trust.

The note provided for payment in advance of the first year's interest, which amounted to $21,506.93. Interest thereafter was to be paid quarterly in advance on the 20th day of January, April, July and October, of each calendar year beginning on January 20, 1974, and continuing until July 20, 1977. Payments on principal were deferred during this period. Thereafter no interest was to be paid until after all prepaid interest was credited to the note.

Principal payments of $2,800 were to be paid on the 20th day of October, January, April and July, of each calendar year beginning on October 20, 1977, and continuing until November 8, 1978. At that time the entire principal balance left due and owing was to be paid. The note provided for attorney's fees if placed in the hands of an attorney for collection or if collected through legal proceedings.

The note executed by Ferguson also provided that interest would cease in the event of prepayment of principal and that any unearned prepaid interest should be applied as a credit upon the principal. It provided that the maker of the note would not be personally liable thereon and that the payee or other holder of the note would look solely to the enforcement of the retained liens for the satisfaction of the debt in the event of default.

The final paragraph of the note reads:

"This note shall be construed under the laws of the State of Texas, and the terms of this note have been made on the assumption that all scheduled payments will be made when herein provided, and in the event of the prepayment of principal, as herein provided for, or accelerated maturity from any cause, any interest paid on this note which is in excess of the maximum lawful rate permitted by the usury laws of the State of Texas as construed by courts having jurisdiction thereof, shall be considered for all purposes as payment on principal, and so credited to the note."

The deed of trust contains this provision:

"In no event shall Grantor be required to pay, for the use, forbearance or detention of the money evidenced by the note secured hereby, more than the maximum legal rate of interest allowed by the laws of Texas, and the right to demand any such excess shall be and is hereby waived; any payment of an amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the note secured hereby; and this provision shall control every other provision of the note and deed of trust."

Ferguson paid the first year's interest ($21,506.93) in advance of November 12, 1973, as agreed. Thereafter, he paid on or about the due dates six quarterly payments of $5,376.73 each and a partial payment in July of 1975 in the sum of $3,376.73, for a total of $57,144.04.[1] When Ferguson failed to pay in full the interest installment which became due on July 20, 1975, Tanner gave him an extension of time to complete the payment, but he failed to do so. Thereafter, Tanner exercised its option under the note and deed of trust to declare the unpaid balance of the note immediately due and payable and gave notice to Ferguson of the acceleration and date of foreclosure. Whereupon, Ferguson filed this suit.

Article 16, Section 11 of the Texas Constitution, as amended November 8, 1960, authorized the Legislature to "define interest and fix maximum rates of interest." Pursuant thereto the Legislature defined interest as "the compensation allowed by law for the use or forbearance or detention of money . . . ,"[2] and enacted the following relevant statutes, effective on October 1, 1967:

"Article 5069–1.04. Limit on rate

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle."

Article 5069–1.06 provides in pertinent part:

"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

A difficult question is presented by the terms of the Ferguson note, because the stipulated rate of interest (9½%) on the stated principal ($226,388.77) was legally within the maximum permitted by law if spread over the entire five-year contract, but during the first year of the contract interest payments exceeded 10% of the principal. The excess during the first year was due to the provision by which both the prepayment of the first year's interest and several quarterly advance interest payments for the second year were made during the period of November 12, 1973, to November 12, 1974.

### Voluntary Payments

One of the grounds for the trial court's decision against Ferguson's claim of usury was its conclusion that the payment of interest in advance was voluntary and hence not usurious. On this point the trial court found that it was Ferguson who insisted upon prepayment of the first year's interest in advance and that the quarterly payments during the first three years be made as advance interest payments rather than principal so that he and his associates would receive the advantage of earlier income tax deductions. It found that Ferguson would not have made the purchase from Tanner

---

1. The Court of Civil Appeals included a later non-accepted payment of an additional $2,000 in its calculation of $59,144.04 as the total amount of interest paid.

2. Article 5069–1.01(a). This and all other statutory references are to Vernon's Annotated Texas Civil Statutes unless otherwise noted.

without these provisions for advance first year and quarterly payments being designated for advance interest rather than principal. Ferguson admitted that for tax benefits he was the one who insisted on the first year's interest being payable in advance after learning that Tanner required more than $6,000 be paid at the time of closing. The trial court concluded, and Tanner insists, that this amounted to a voluntary prepayment of interest for the convenience of Ferguson. Tanner bases its argument on the holding of *Vela v. Shacklett,* 12 S.W.2d 1007 (Tex.Com.App.1929, jdgmt adopted), and the rule stated in 45 Am.Jur., Interest and Usury § 178 at 142 that interest is not usurious if voluntarily paid in advance by the borrower for his own personal convenience and not as a matter of contractual compulsion. See also 57 A.L. R.2d 630, 670–71.

The Court of Civil Appeals correctly overruled Tanner's contention on this point. Negotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole and in light of attending circumstances and of the governing rules of law that the parties are presumed to have intended to obey. *Walker v. Temple Trust Company,* 124 Tex. 575, 80 S.W.2d 935 (1935). However, once the agreed terms have been reduced to writing in the form of a compulsory contract, the test of alleged usury is not concerned with which party might have originated the alleged usurious provisions.

### Spreading of Interest Over the Term of the Contract

Neither of the lower courts based their judgments on the effect of the first year's excessive payments alone. Instead both looked to the whole five-year term of the note. Both tested the contract by comparing the total interest provided for in the note with the maximum amount that could lawfully be charged over the five-year term, using the method employed by this Court in *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937). The lower courts ended up with opposite results only because they used different "true" principal sums of the note in making their computations.

The trial court held that the "true" principal sum of the note was the stated face amount of $226,388.77. On this amount it held that the rate per annum of 9½% over the five-year period was not usurious because the total yield did not exceed the amount that could have been charged under the maximum legal rate. It found that upon default and acceleration on August 11, 1975, Tanner, as provided in the note, credited pre-paid interest in excess of the amount accrued to reduce the unpaid principal balance due and owing on the note, leaving a remainder of unpaid principal in the sum of $206,778.74. It was for this amount, plus 10% interest after August 11, 1977, and 10% attorney's fees that the trial court rendered judgment for Tanner, to be satisfied only by sale of the land and without any personal liability against Ferguson.

The Court of Civil Appeals held that the "true" principal of the note was $204,881.84, because it erroneously concluded that the $21,506.93 prepayment of interest "in reality constituted a portion of the principal which was not to be advanced until it was applied to the loan beginning July 20, 1977." Accordingly, the Court of Civil Appeals deducted the $21,506.93 of "prepaid interest" from the $226,388.77 stated principal and computed its maximum "actual" legal rate for the five-year period on the reduced principal sum of $204,881.84. On this reduced principal sum the maximum legal rate of interest payable over the term of the note was figured to be $101,442.67. This compares with its calculation of total interest contracted to be payable on the note as $106,520.42, or a total of $5,077.75 more than the maximum allowed by law.[3]

---

**3.** The procedure and calculations are set forth on computation sheets attached as an Appendix to the opinion of the Court of Civil Appeals.

541 S.W.2d 483 at 496–99. There are minor differences between some of the totals as stat-

However, in the $106,520.42 figure, the $21,506.93 prepayment was included as interest. Except therefor, the total interest payable on the reduced principal would have been well within the maximum legal rate over the five-year term of the note. It is an obvious error in these calculations to count the $21,506.93 prepayment as both principal and interest.

■ As heretofore indicated, the trial court properly made its spreading calculations and comparisons on the principal sum as stated on the face of the note, treating all prepaid payments as interest when so designated by written agreement of the parties. When so spread and averaged the total rate of interest payable on the face of the note during its term equals precisely 9½ % per annum. We have been cited no authority, and have found none, which would support the action of the Court of Civil Appeals in judicially declaring the first year's prepayment of interest to be principal and then deducting it to arrive at a lower "true" principal sum. If it is proper to judicially declare the prepayment to be something different from what the parties called it in their contract, there is greater support in the evidence for treating it as an additional down payment on the principal and thus reducing both the principal and the total interest in equal amounts. However, as recognized by the Court of Civil Appeals in a subsequent conflicting paragraph of its opinion, "[t]he initial payment was called interest and was to be applied as interest. . . . The intention of the

parties concerning amount of interest due and the dates on which it was to be paid is clear." Obviously, it was error to convert the prepaid interest into principal or to apply it to principal in any manner other than as specifically provided in the "savings clauses" of the note and deed of trust.[4]

The Court of Civil Appeals may have fallen into the error of reducing the principal sum by the amount of the prepayment of interest because in *Nevels* and other cases where fees or commissions were deducted from cash loans, the "true" amounts of the loans and the notes were reduced accordingly in testing for usury.[5] The amount of cash actually received by the borrower was held to be the "true" principal. On this point, the facts of the present case are different. The transaction here was not a loan of money from which any fee, commission or interest was withheld from the payor. Rather, it was a sale of real estate in which Ferguson received a deed to ten acres of land in exchange for his cash down payment and the delivery of the promissory note in the sum of $226,-388.77. None of the consideration for Ferguson's note was reserved by Tanner or returned by Ferguson to Tanner. Ferguson had at all times the full use and benefit of the ten acres. Ferguson's prepaid interest was received and credited by Tanner as stipulated in the note. It was contrary to the terms of the contract to treat the prepayment of the first year's interest in any other manner than as provided by the note and the deed of trust.

We hold that the "true" principal sum of the note was its stated face amount. If the

ed in the opinion and as shown on the computation sheets.

**4.** As heretofore quoted on page 779, supra, the final paragraph of the note provided that "in the event of prepayment of principal . . . any interest on this note which is in excess of the maximum lawful rate permitted by the usury laws . . . shall be considered for all purposes as payment on principal, and so credited to the note." This is the type of specific savings clause which was approved in *Nevels v. Harris, supra.* See also *Imperial Corp. of America v. Frenchman's Creek Corp.,* 453 F.2d 1338 (5th Cir. 1972).

**5.** In *Nevels, supra,* the note was in the stated sum of $6,400 payable in five years at an interest rate of 8% per annum, but the lender charged the borrower a $320 fee for making the loan and deducted it from the cash proceeds of the loan. This Court treated the actual loan as $6,080 in determining that the interest charged was not in excess of the legal maximum over the five-year term of the note. See also *Adleson v. B. F. Dittmar Co.,* 124 Tex. 564, 80 S.W.2d 939 (1935).

Court of Civil Appeals had applied its computations and comparisons to the stated principal sum, its result would have been the same as that of the trial court.

### Conflicting Authorities on "Spreading"

While the note in question is not usurious under the "spreading" doctrine of *Nevels*, Ferguson argues that it is, in any event, usurious under *Commerce Trust Co. v. Ramp*, 135 Tex. 84, 138 S.W.2d 531 (1940), which the lower courts declined to follow. *Ramp* stands for the proposition that payment of more than ten percent interest in any one year of the effective term of an extended loan is usurious, even though the total interest payments for the whole period did not exceed the rate and amount of yield authorized by law. Thus, it conflicts with *Nevels*.

It must be conceded that during the decade of 1930 to 1940 this Court was not entirely consistent in its writings on this phase of the usury law. These decisions predated the modern practice of charging points in addition to the constant long-term interest rate,[6] and the recently popular tax sheltered investment in real estate on long-term notes which defer principal payments and require only interest to be paid during the early years of the note.[7] More importantly, our conflicting cases were written before usury penalties were extended to the entire amount of "interest contracted for," whether or not it was "received" by the payee.[8] Yet, in this first case since 1940 in which our Court has been called upon to resolve the point at issue, we find principles enunciated in the earlier cases which are helpful in the present task.

To begin with, it was held in 1930 that usury does not result from the long practice of charging not to exceed one year's interest at the highest lawful rate one year in advance of maturity. *Bothwell v. Farmers' & Merchants' State Bank & Trust Co.*, 120 Tex. 1, 30 S.W.2d 289 (1930). See also *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930), which was decided on the same day. This rule would govern the present case if only prepayment of the first year's interest were involved. It does not sanction, however, the additional overlapping of advance quarterly interest payments made for the second year during the first twelve months of the note. The question remains as to whether these advance quarterly payments of interest during 1974 may be spread over the subsequent years of the five-year note.

In 1935, the forerunner of the *Nevels* concept was written in a Commission of Appeals opinion adopted by this Court in *Adleson v. B. F. Dittmar Co.*, 124 Tex. 564, 80 S.W.2d 939 (1935). In that case a $6000 note was payable in 60 monthly installments, including interest at 9.48% per annum, plus a $240.00 "commission" charged by the lender when the note was executed. The "commission" was regarded as additional interest, which meant that interest in the first year (including the front-end commission) had been collected at a usurious rate of 13.48% per annum. A usury suit was filed against the lender after the third year. Upon the theory that any usurious interest was received only in the first year, the lender contended that the statute of limitations (then two years) barred recovery, since no usurious interest was charged or received within the two years prior to

6. A "point" denotes a fee or charge equal to one percent of the principal amount of the loan, usually collected as a "front-end" payment and judicially treated as "front-end interest."

7. See Graham, *The Prepaid Interest Deduction Viewed from the Perspective of Real Estate Transactions*, 29 SW L.J. 412 (1975).

8. Prior to October 1, 1967, the effective date of Article 5069–1.06(1), usury penalties on loans to individuals were twice the amount of usurious interest "received" by the lender. See repealed Article 5073. Extension of the penalty to all "interest contracted for," whether or not paid, could amount to a substantially larger sum on long-term notes alleged to be usurious. For instance, the penalties sought by Ferguson in this case amount to nearly as much as the original purchase price for the land.

the suit. The Commission disagreed. It averaged the full amount of interest charged over the entire term of the note and concluded that a usurious rate of 11.268% per annum was charged throughout the term, including the two years immediately preceding the suit.

The same procedure was followed as to a $70 "commission" deducted from a $1500 loan in *Eubanks v. Simpson,* 90 S.W.2d 291 (Tex.Civ.App.1936, writ ref'd). The $70 was held to be interest and the loan would have been usurious if the interest paid during the first year had been considered separately. The court, however, averaged the interest charges over the full term of the note and found that the contract was not usurious. See also *Southern States Mortgage Co. v. Lykes,* 85 S.W.2d 780 (Tex.Civ. App.1935, writ ref'd), for a similar holding.

In 1937 the *Dittmar* and *Eubanks* approach was embraced in *Nevels v. Harris, supra,* which is often cited as the leading authority on "spreading." Its basic facts have been discussed above. The judicially declared interest (a $320 front-end fee) added to the contracted 8% per annum on a five-year $6400 stated principal (or $6080 true principal) would have rendered the first year's interest payments usurious. However, the Court looked to the full term of the note, spread the interest over the five-year term of the contract and found that the note was not usurious. What has since been referred to as the *Nevels* doctrine was stated by this Court as follows:

> "If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at

10 percent per annum from the time the borrower had the use of the money until it is repaid, it is not usurious." [9]

*Nevels* was followed on this point more recently in *Imperial Corp. of America v. Frenchman's Creek Corp.,* 453 F.2d 1338 (5th Cir. 1972), and *Commerce Savings Ass'n of Brazoria County v. GGE Management Co.,* 539 S.W.2d 71 (Tex.Civ.App.1976), which was modified on another point and affirmed by this Court in 543 S.W.2d 862 (1976). There is also authority for spreading interest paid in advance over the entire term of the loan in other jurisdictions.[10]

On the other hand, the *Ramp* approach, which would prohibit "spreading" and apply a year-by-year testing even of long-term contracts, was derived from a 1933 opinion of the Commission of Appeals in *Dallas Trust & Savings Bank v. Brashear,* 65 S.W.2d 288 (Tex.Com.App.1933, jdgmt adopted). In that case Brashear borrowed $3000 from the bank at 9% interest per annum for a term of ten years. He executed a series of notes which resulted in an effective rate of interest of 11% during each of the first five years and 7% during the last five years. Spread and averaged over the ten-year term, the loan bore interest at the rate of 9% per annum. However, amounts equal to 2% interest for the ten-year period were "squeezed" into the first five years, so that the actual amount of interest collected during each of the first five years exceeded 10% per annum. This was held to be usurious.

In *Commerce Trust Co. v. Ramp,* 135 Tex. 84, 138 S.W.2d 531 (1940), this Court, in a similar fact situation followed the rule an-

9. The rule is an actual quote from *Southern States Mortgage Co. v. Lykes,* 85 S.W.2d 780, 788 (Tex.Civ.App.1935, writ ref'd). The words almost paraphrase a much earlier statement of this Court in *Mills v. Johnston,* 23 Tex. 308, 329–30 (1859), wherein it was said:

> "The law, in deciding whether a settlement involves usury or not, *will look at the whole amount of interest reserved . . . and to the whole period of forebearance extended*; and if the charges, properly imputable to interest, do not exceed the highest interest

allowed by law, *for the whole period of forebearance,* then the settlement cannot be held to be usurious." (Emphasis supplied.)

10. *Green v. Conservative Loan Co.,* 153 Ark. 219, 240 S.W. 13 (1922); *American Inv. Co. v. Roberts,* 29 N.M. 99, 218 P. 1037 (1928); *American Inv. Co. v. Lyons,* 29 N.M. 1, 218 P. 183 (1923); *Metz v. Winne,* 15 Okl. 1, 79 P. 223 (1904); *Montgomery Fed. Sav. & Loan Assn. v. Baer,* 308 A.2d 768 (D.C.App.1973).

nounced in *Brashear*. *Ramp* involved a ten-year loan with multiple notes which "squeezed" an additional 2½% interest into four annual payments "instead of being spread over the ten year period of the loan, and this made the first four years in excess of 10 percent per annum." This was held to be usurious.

The *Brashear* and *Ramp* cases have not been followed on this point as often as the contrary result reached in the *Nevels* line of cases. One of the most recent cases to follow *Ramp* in testing a loan for usury was *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.*, 511 S.W.2d 724 (Tex.Civ.App.1974, writ ref'd n. r. e. with per curiam, 516 S.W.2d 136 (Tex. 1974)). The Court of Civil Appeals held the note in that case to be usurious because it provided for more than 10% per annum interest during the first year and part of the second year of the note. Just as easily the court could have found the note to be usurious under the *spreading* concept of *Nevels*, because it was undisputed that the annual interest rate over the entire term of the loan was 10.798% per annum. In electing to follow *Ramp*, the Court observed that "a loan contract is considered usurious if for the first year or first few years it requires the payment of more than the lawful rate, even though the interest calculated over the entire loan period does not exceed the statutory limit."

In a per curiam opinion, 516 S.W.2d 136 (1974), we cited *Ramp* on a completely different holding and agreed with that point. However, on the rather obvious dictum contrary to the *Nevels* concept of spreading, we reserved judgment in the following words:

"In the course of its opinion, the court of civil appeals held that a loan contract is regarded as usurious if during the first year, or first few years, it requires the payment of interest at greater than the legal rate, even though the interest calculated over the entire period of the loan does not exceed the statutory limit. The effect of such a holding is to label as usurious any loan in which the stated interest rate plus any discount, fees, points, or other front-end charges that are judicially determined to be interest exceed the lawful rate for the first year even though spreading the front-end charges over the term of the loan results in an overall interest rate below the legal limit. No question as to the spreading of front-end charges over the life of a loan is presented by the facts in this case, and our action on the application for writ of error is not to be interpreted as an expression of opinion on that question."

We have purposely refrained from making any distinctions in this opinion between interest stipulated by the parties and judicially declared interest, or between interest in advance and front-end interest. Technical and economic differences exist. However, all forms of compensation for the use, forbearance or detention of the principal debt have been treated alike in applying the usury laws for such a long period of time that it would only create more confusion if they were now treated in any different manner.

The confusion in the cases and their treatment of "interest in advance" and "front-end interest" is discussed in detail by several law review writers.[11] See also the discussion in *Riverdrive Mall, Inc. v. Larwin Mortgage Inv.*, 515 S.W.2d 5 (Tex.Civ.App. 1974, writ ref'd n. r. e.). Existence of the problem was apparently recognized by the

---

11. See Monning, *Usury Implications of Front-End Interest and Interest in Advance*, 29 SW L.J. 748 (1975); Weaver, *Usury in Texas: Spreading Interest Over the Entire Period of the Loan*, 12 Houston L.Rev. 159 (1974); Loiseaux, *Some Usury Problems in Commercial Lending*, 49 Texas L.Rev. 419 (1971); and Pearce and Williams, *Punitive Past to Current Convenience—A Study of the Texas Law of Usury*, 22 SW L.J. 233 (1968). See also, Note, *Problems of Interest: Texas Municipal Bonds and the Usury Laws*, 54 Texas L.Rev. 1130, 1137–41 (1976). Citation of these writings is not an indication of our agreement with any of the conclusions stated therein except as specifically set forth in this opinion.

Sixty-Fourth Legislature when, on June 2, 1975, it enacted House Bill 351, the relevant portion of which is now codified as Article 5069–1.07(a) and reads as follows:

"(a) On any loan or agreement to loan secured or to be secured, in whole or in part, by a lien, mortgage, security interest, or other interest in or with respect to any interest in real property, determination of the rate of interest for the purpose of determining whether the loan is usurious under all applicable Texas laws shall be made by amortizing, prorating, allocating, and spreading, in equal parts during the period of the full stated term of the loan, all interest at any time contracted for, charged, or received from the borrower in connection with the loan. However, in the event the loan is paid in full by the borrower prior to the end of the full stated term of the loan and the interest received for the actual period of the existence of the loan exceeds the maximum lawful rate, the lender contracting for, charging, or receiving all such interest shall refund to the borrower the amount of the excess or shall credit the amount of the excess against amounts owing under the loan and shall not be subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum lawful rate." [12]

While Tanner does not contend that this statute should be applied retroactively, it does argue that as to loans secured by real estate the Legislature merely codified the existing law as applied in the *Nevels* line of cases. There is some legislative history in

support of this view.[13] On the other hand, Ferguson argues that if the *Nevels* doctrine was already applicable to all forms of interest paid in advance, then there was no need for the new statute. In any event, under the points as presented in this appeal we are not required to determine whether Article 5069–1.07(a) should be considered, and we decide the case without regard to Article 5069–1.07(a). We simply observe in passing that the statute did in fact adopt the *Nevels* doctrine of spreading all interest over the whole term of loans secured by real property, whether it be "interest in advance," "front-end interest," or a mixture of both.

■ As heretofore indicated, long before the Ferguson-Tanner contract was executed in 1973, this Court had adopted the *Nevels* doctrine of testing for usury by spreading judicially determined interest over the entire term of the contract. We hold that the same rule should be applied to stipulated interest in the present case. When, in 1967, the Legislature extended the usury penalties to interest "contracted for" during the entire term of a note (Article 5069–1.06), it seems only reasonable that it intended for the contract to be tested for usury on the basis of the compensation charged for the entire term during which the borrower had use, detention or forbearance of the principal debt. Since the contract in question provided Ferguson, the payor, with the full use of the consideration represented by the actual face amount of the note (the ten acres of land) for the entire term of the contract, and since usury penalties are now applied to the entire contract, we are com-

---

12. Acts 1975, 64th Leg., p. 47, Ch. 26, No. 1, effective September 1, 1975. Tanner makes no contention that this statute, effective subsequent to the contract in question, is retroactive under the exceptions discussed in 4 A.L.R.2d 932, 944–948. Neither does it contend that the new provision should be interpreted in *para materia* with the previously enacted Articles 5069–1.04 and 1.06, dealing with the same subject matter.

13. See Monning, 29 SW L.J. 748, *supra*, at pages 749 and 763–64 for a discussion of the

legislative history. A proponent explained to a Senate Committee: "[W]hat we are doing by the interest amortization in the first provision is just codifying what the existing law is." *Minutes of the Economic Development Committee of the Senate*, 64th Leg., p. 7 (March 10, 1975). The Bill Analysis attached in the House states that it "would limit interest rates and points to a maximum of 10%." *"What the Bill Proposes to Do,"* H.B. 351, 64th Leg. (Second Official House Printing, Feb. 19, 1975).

pelled to hold that the advance interest payable under the present note should be spread over the entire term of the contract. To do otherwise would be manifestly unfair and unjust under the law as it existed when the Ferguson-Tanner contract was executed. In our opinion, it would be beyond the obvious intent of the Legislature in the enactment of Article 5069–1.06 to impose its severe penalties solely upon proof that one year's interest payments exceeded the statutory limit, where over the effective period of the contract, interest payments were not, in the aggregate, in excess of the amount authorized by law. We hold, therefore, that the note in question was not usurious.

This opinion is limited to contracts covered by Article 5069–1.06(1), wherein the stated rate of interest on the principal debt does not exceed 10% per annum and wherein all consideration (contracted for and judicially determined) for use, detention or forbearance of the principal debt is a sum no greater than such principal debt would produce at 10% per annum during the full time that the payor has use of the principal debt or the consideration (such as land) which is represented by the principal debt. Insofar as the opinion in *Commerce Trust Co. v. Ramp, supra,* is in conflict with this opinion, it is overruled. Likewise, the conflicting holding of the Court of Civil Appeals in *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc., supra,* is disapproved.

Accordingly, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

McGEE, J., notes his dissent.

JOHNSON, J., concurs in the result.

### ON MOTION FOR REHEARING

In a motion for rehearing Respondent Ferguson insists that we should have treated the principal of the vendor's lien note ($226,388.77) as though it had been a loan of money from which the lender had deducted the prepaid interest ($21,506.93), thus resulting in a true principal of $204,881.84 and a total yield of more than ten percent interest per annum during the five year term of the note. Ferguson contends that our failure to so reduce the principal and hold the contract usurious will serve as a precedent for the same result where loans of money are involved.

Since this case involves no loan of money, and our opinion distinguishes the nature of the principal debt from a loan of money, we doubt the necessity of disclaiming it as a precedent for testing money loans from which interest or other front-end payments have been deducted by the lender or returned to the lender. To make this abundantly clear, however, we reiterate that in cash loan transactions from which the lender deducts interest, fees, commissions or other front-end charges, the amount of dollars actually received or retained by the borrower is held to be the "true" principal. In such cases the amount of the stated principal is reduced accordingly in testing for usury. See *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937), and our statement of this rule in our opinion of October 19, 1977.

As stated in our opinion, the transaction in the present case was not a loan of money from which any fee, commission or interest was withheld from the payor. Rather, it was a sale of real estate in which Ferguson received a deed to ten acres of land. The $226,388.77 vendor's lien note was given by Ferguson as partial payment for ten acres of land deeded to him by Tanner. None of the consideration for Ferguson's note was reserved by Tanner or returned by Ferguson to Tanner. Ferguson had the full use and benefit of the ten acres purchased by the note. Furthermore, the note provided that Ferguson would not be personally liable to pay any sum of money thereon and that the payee would look solely to the liens on the ten acres for satisfaction of the note in the event of default. Clearly, this trans-

action is distinguishable from a loan of money, and there was no reason to judicially reduce the principal of the note so long as Ferguson had use of the land and forbearance on the stated principal during the entire term of the note.

*Alternative Points on Interest "Charged"*

■ In his motion for rehearing, Ferguson for the first time calls our attention to his alternative points in the Court of Civil Appeals on interest "charged," which were not disposed of by that Court. While cross-points in this Court would have been the better procedure, it is properly urged that we may now consider and rule on these points rather than remand the case to the Court of Civil Appeals. *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977); *McKelvy v. Barber,* 381 S.W.2d 59 (Tex.1964); Hatchell and Calvert, *Some Problems of Supreme Court Review,* 6 St. Mary's L.J. 303, 318–322 (1974).

The alternative points assert that, even if the loan contract is not usurious, Tanner by its actions "charged" Ferguson usury during the events surrounding the attempted acceleration and foreclosure of the note. The alleged "charging" of the full face amount of the note without crediting unearned interest is based upon (1) a letter on behalf of Tanner dated August 12, 1975, notifying Ferguson that because of default the owner of the note had elected to accelerate maturity and demanding "the full unpaid principal balance together with accrued interest, delinquent interest, and attorney's fees"; (2) an enclosed notice of trustee's sale to satisfy "said indebtedness . . . now wholly due . . ."; and (3) a letter to Ferguson on behalf of Tanner dated August 20, 1975, returning a $2,000 late cash deposit; reiterating that the maturity of the loan had already been accelerated; and stating that the tendered $2,000 was insufficient to pay "the full principal balance of the note, accrued interest, delinquent interest, collection fees and attorney's fees."

The letter of August 20, 1975, written by the Trustee under the deed of trust, Julian M. Moss, Jr., stated: "You may obtain the exact pay off amount necessary by calling my office between 8:30 a. m. and 5:00 p. m. Monday through Friday." Ferguson testified that he called Moss for such information; that Moss was out of town; and that Ferguson never received any pay off amount from Moss or Tanner. The first time Tanner associates calculated the balance due on the note was on September 1, 1975, at which time unearned interest was credited to the principal as provided in the note. This was also done in arriving at the sum of $206,778.74 as the balance due on the note when Tanner first filed its counterclaim for debt and judicial foreclosure on December 10, 1975.

■ Article 5069–1.06 applies in the disjunctive to either a contract for, a charge of, or receipt of usurious interest, and the occurrence of any one of such conditions triggers the penalty provisions of the statute. *Windhorst v. Adcock Pipe and Supply,* 547 S.W.2d 260 (Tex.1977). In *Adcock* there was no contract between the parties, but the retailer unilaterally charged to its customer's open account definite sums equal to one and one-half percent per month interest as a "finance charge." This was held to be a usurious "charging." A similar holding was made with reference to "charging" under the provisions of Articles 5069–8.01 and 5069–8.02 of the Texas Consumer Credit Code in *Moore v. Sabine National Bank of Port Arthur,* 527 S.W.2d 209 (Tex.Civ.App.1975, writ ref'd n.r.e.), wherein the bank had demanded a definite sum of $11,842.96 in its notice of intention to repossess, its original petition, and its sequestration affidavit. This sum included an unearned finance charge of $3,957.89, and the demand, suit and sequestration action were held to be an unlawful "charging" under Articles 5069–8.01 and 5069–8.02.

■ The foregoing cases are the only ones cited by Ferguson in support of his

contention that Tanner's letters and notice amounted to a "charging" of usurious interest. Both are distinguishable from the facts of this case. The letters to Ferguson on behalf of Tanner refer only to a claim for the "full unpaid principal *balance*," and "the full principal *balance*," respectively. (Emphasis supplied.) Neither they nor the notice demand payment of the full face amount of the note. Rather, the use of the term "principal balance" in the letters implies a demand for something less than the full face amount of the note. We construe the letters as referring to whatever balance was due on the principal after applying all payments and credits under the terms of the note. One of the terms was that any unearned interest payments shall be credited on the principal, and that is what Tanner did in arriving at the first and only dollar amount demanded of Ferguson. Since Tanner neither demanded nor sued for any interest in excess of ten percent per annum during the period of forbearance, we agree with the conclusion of the trial court that Tanner did not charge Ferguson any interest in excess of the amount permitted by law. Therefore, Ferguson's alternative points on "charging" are overruled.

Accordingly the motion for rehearing is overruled.