[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR DEFICIENCY JUDGMENT
Plaintiff in this case has obtained a judgment of Strict Foreclosure and title to the subject premises has vested in it. Plaintiff subsequently filed a timely Motion for Deficiency Judgment pursuant to C.G.S. 49-14. Along with this motion, plaintiff filed a Memorandum for Deficiency Judgment After Strict Foreclosure demanding full payment with interest calculated at the rate of 12.5% per annum pursuant to the note. Defendant objected to the plaintiff's motion and interposed a defense based on Connecticut's usury laws, C.G.S. 37-4 et seq., which bar the demand of interest at a rate greater than 12% per annum.[1] Plaintiff replied that its Motion for Deficiency Judgment is exempted from the usury statutes pursuant to C.G.S. 37-9(3) and that even if the court finds otherwise, the plaintiff did not act with the intent required under the usury statutes to bar the deficiency judgment.
The plaintiff asserts that its claim for deficiency judgment cannot be contested by the invocation of the usury CT Page 3266 statutes because the mortgage at issue here, being in excess of $5,000, is unaffected by the usury statutes under C.G.S. 37-9(3). C.G.S. 37-9(3) reads in pertinent part:
 The provisions of Sections 37-4 (see supra), 37-5 and 37-6 shall not affect . . . (3) any bona fide mortgage of real property for a sum in excess of $5,000. C.G.S. 37-9.
The plaintiff is right that his mortgage is exempt from the usury statutes. But there is a distinction between plaintiff's rights under the mortgage and under the note secured by the mortgage. As the Supreme Court noted in Atlas Realty Corp. v. House, 120 Conn. 661, 670 (1936):
 "A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this State action for foreclosure of the mortgage and upon the note are regarded and treated in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit."
Our courts have interpreted the exemption in C.G.S.37-9 to permit a foreclosure of the mortgage securing a note which calls for an interest in excess of 12%. Atlas Realty v. House, supra. They have also interpreted 37-4 and 37-8
to bar an action against the mortgagor personally to collect on the usurious note. Ibid., see also same case on appeal after remand, 123 Conn. 944 (1937).
The question here is whether or not 37-4 and 37-8 not only prohibits an action to impose personal liability of the mortgagor on the note, but also prohibit the imposition of a delinquency judgment on the mortgagor based on the difference between the amount of the debt owed on the note and the value of the foreclosed-upon mortgaged property. The precise issue had never been squarely decided by a Connecticut Appellate Court until Maresca v. DeMatteo, 6 Conn. App. 691 (1985). That case clearly held that a deficiency judgment cannot be obtained on a usurious note. The court said that:
 ". . . the deficiency judgment procedure, although procedurally a part of the foreclosure action, serves the separate function of providing for CT Page 3267 recovery of the balance of the note which is not satisfied by the strict foreclosure. . . . The deficiency judgment procedure is the functional equivalent of a suit on the note to which the usury statutes would apply. We conclude, therefore, usury is a defense in a deficiency judgment proceeding, and that the trial court was in error in precluding it."
Maresca at 696.
Plaintiff contends further, that even if usury is a defense to a deficiency judgment, it lacks the unlawful intent required under Connecticut law to constitute a violation of C.G.S. 37-4.
As mentioned above, Maresca notes that "in some circumstances, a lender can evade the usury bar by showing that he had no intent to extract more than the lawful rate of interest." Maresca at 696 (citing Mutual Protective Corp. v. Palatnick, 118 Conn. 1, 5 (1934). The plaintiff cites Paragraph 5 of the Mortgage Note as proof that it did not possess such an unlawful intent. The paragraph reads as follows:
 If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me (the borrower) which exceeded permitted limits will be refunded to me (the borrower). (parentheticals added).
While this disclaimer or "savings clause" appears to negate any intent to extract a usurious rate of interest at the time the note was drafted, the plaintiff's subsequent actual demand and acceptance of the 12.5% rate of interest reveals a different intent after the note was executed. Its Affidavit of Debt at the time of foreclosure calculates the amount due at the usurious rate. This may be excusable as to the foreclosure, because C.G.S. 37-9(3) exempts the mortgage from usury. But its Affidavit of Debt in support of its Motion for Deficiency Judgment likewise applies the insurious rate. This runs directly counter to Golden v. Lyons, 151 Conn. 21
CT Page 3268 (1963).
The Golden court held that even if a creditor had no unlawful intent to commit usury when the note was originally signed, when the same creditor actually accepted payments in excess of those allowed by law, his action was per se usurious and "cannot be condoned by any declaration of lack of intent to violate the law." Golden, supra, at 27 (citing Atlas Realty Corporation v. House, 123 Conn. 94, 100 (1937).
Connecticut courts have not confronted the question whether a savings clause such as the one at issue here will protect a creditor from usury sanctions after the creditor has in fact made a demand or charge for usurious interest.
Other jurisdictions are divided over whether the existence of a usury savings clause will insulate the lender from usury sanctions in such a situation. Texas courts have repeatedly acknowledged the validity of usury savings clauses and enforced such clauses to defeat a violation of the usury laws. Woodcrest Assoc., Ltd. v. Commonwealth Mortgage Corp.,775 S.W.2d 434, 437 (Tex. 1991); see also Tanner Dev. Co. v. Ferguson, 561 S.W.2d 777 (Tex. 1977); Nevels v. Harris, 102 S.W.2d 1046 (Tex. 1937).
On the other hand, the North Carolina Supreme Court recently held in Swindell v. Federal Nat'l Mortgage Assoc.,409 S.E.2d 892, 896 (N.C., 1991) that "the `usury savings clause' . . . cannot shield a lender from liability for charging usurious rates." The court reasons as follows: "The [usury] statute relieves the borrower of the necessity of expertise and vigilance regarding the legality of rates he must pay. That onus is placed instead on the lender, whose business it is to lend money for profit and who is thus in a better position than the borrower to know the law. A `usury savings clause', if valid, would shift the onus back onto the borrower, contravening statutory policy and depriving the borrower of the benefit of the statute's protection and penalties. . . . A lender cannot charge usurious rates with impunity by making that rate conditional upon its legality and relying upon the illegal rate's automatic rescission when discovered and challenged by the borrower."
This court finds the reasoning in Swindell persuasive. CT Page 3269 Connecticut's usury statute has the same basis in public policy, namely to protect borrowers. Golden v. Lyons, clearly implements that policy by holding that when a lender "actually charged, demanded or accepted interest in excess of the legal 12 percent, his action was per se usurious and cannot be condoned by any declaration of lack of intent to violate the law." 151 Conn. at 27, underlining added.
Here, plaintiff demanded interest at usurious rate in this deficiency judgment procedure. That was usury, and the savings clause in the note does not excuse the offense.
This interpretation has particular force in a case such as this where the creditor has already received title to the property, which was appraised at more than the original debt cited in the plaintiff's complaint.[2] Therefore, the plaintiff only forfeits its rights to a deficiency consisting almost entirely of post-litigation costs. While the usury statutes in Connecticut are particularly severe,[3] this Court believes that the interpretation that an actual charge or demand for usurious interest after the mortgage foreclosure, reveals a usurious intent and bars a deficiency judgment, notwithstanding the existence of a savings clause in the contract.
In light of the foregoing, the Court hereby denies the plaintiff's motion for Deficiency Judgment.
Robert Satter State Trial Referee