# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2025

Lyle W. Cayce
Clerk

———————

No. 23-10804

———————

AMERICAN PEARL GROUP, L.L.C., *a Texas limited liability company*;
JOHN SARKISSIAN; ANDREI WIRTH,

*Plaintiffs—Appellants*,

*versus*

NATIONAL PAYMENT SYSTEMS, L.L.C.,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-693

———————————————————————

Before STEWART, DUNCAN, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:[*]

Plaintiff-Appellants American Pearl Group, L.L.C., John Sarkissian, and Andrei Wirth (collectively, "Pearl") appeal the district court's Rule 12(b)(6) dismissal of their claims asserting that Defendant-Appellee National Payment Systems, L.L.C. ("NPS") charged "usurious interest" in violation of Texas law. Considering the answer provided by the Supreme Court of

———————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Texas to our certified question, we REVERSE the district court's dismissal of Pearl's usury claim regarding the NPS Loan's scheduled interest payments, VACATE that aspect of the district court's judgment, and REMAND.

## I.

Experiencing cash-flow problems, Pearl borrowed $375,100.85 from NPS (the "NPS Loan") on May 8, 2019. The $375,100.85 sum was to be repaid with interest over 42 months, ending in October 2022. With the addition of interest, Pearl owed NPS a total of $684,966.76. Although the NPS Loan Agreement does not articulate an exact percentage rate of interest, an attached payment schedule denoted each payment's allocations toward principal and interest. The NPS Loan was secured by Pearl's residuals portfolio and incorporated an agreement (the "Option Agreement") granting NPS an irrevocable option to acquire the future residual payment rights for a portion of the merchants in Pearl's residuals portfolio.

On March 25, 2022, Pearl sued NPS, seeking a declaration that the NPS Loan and incorporated Option Agreement violate Texas's usury statute, an award of damages, and attorney's fees. We previously reversed the district court's dismissal of Pearl's usury claim concerning the purchase option conveyed to NPS in the Option Agreement, vacated that aspect of the district court's judgment, and remanded for further proceedings regarding that claim.

In its appeal, Pearl also challenges the district court's determination that the NPS Loan's scheduled interest payments did not charge an aggregate amount of interest in excess of the lawful maximum rate. Pearl contends that the district court erred in its interpretation and application of Texas Finance Code § 306.004, which addresses the calculation of interest rates on commercial loans. The provision states:

**§ 306.004 – Determining Rates of Interest By Spreading**

(a) To determine whether a commercial loan is usurious, the interest rate is computed by *amortizing or spreading, using the actuarial method during the stated term of the loan*, all interest at any time contracted for, charged, or received in connection with the loan.

(b) If a commercial loan is paid in full before the end of the stated term of the loan and the amount of interest received for the period that the loan exists exceeds the amount that produces the maximum rate authorized by law for that period, the lender shall:

> (1) refund the amount of the excess to the borrower; or

> (2) credit the amount of the excess against amounts owing under the loan.

(c) A lender who complies with Subsection (b) is not subject to any of the penalties provided by law for contracting for, charging, or receiving interest in excess of the maximum rate authorized.

Tex. Fin. Code Ann. § 306.004 (emphasis added). In particular, Pearl challenges the district court's interpretation and application of "amortizing or spreading, using the actuarial method during the stated term of the loan." Pearl relies on that language in arguing that the aggregate amount of interest set forth in the NPS Loan's payment schedule exceeds the lawful maximum annual rate.

To determine the maximum total amount of interest allowable, the district court calculated the NPS Loan's interest by spreading the total amount of interest charged over the term of the loan in equal parts. This type of "spreading" stems from the Supreme Court of Texas's decision in *Nevels v. Harris*, 102 S.W.2d 1046, 1049 (Tex. 1937), and was reaffirmed in *Tanner Dev. Co., v. Ferguson*, 561 S.W.2d 777, 787 (Tex. 1977)). Applying that method here, the district court multiplied $375,100.85 (the principal on the NPS Loan) by an annual interest rate of 28% and by 3.5 years (the term of the

NPS Loan), to calculate a maximum allowable interest amount of $367,598.83. And, because the total amount of interest paid pursuant to the NPS Loan Agreement—$309,865.91—is less than that amount, the district court rejected Pearl's contention that the NPS Loan Agreement charged an usurious interest rate in violation of § 303.009(c) and § 306.004(a) of the Texas Finance Code.

Emphasizing the Texas Legislature's interim enactment of the "spreading" language in § 306.004(a), such that the current text differs from that at issue in *Nevels* and *Tanner*, Pearl contends that the statute's reference to "using the actuarial method" means that the *total lawful interest amount* for the loan is the *sum* of the interest amounts calculated for *each* payment period, over the life of the loan, based on a *declining* principal balance, *not* the initial total principal amount of the loan. Using Pearl's proposed methodology and data, the total permissible amount of interest for the NPS Loan was $207,277.80, rather than the $367,598.83 determined by the district court, such that the total amount of interest charged—$309,865.91—yielded a legally excessive interest payment of $102,588.11.

Rather than making an *Erie* guess, we certified the following question of law to the Supreme Court of Texas:

> Section 306.004(a) of the Texas Finance Code provides: "To determine whether a commercial loan is usurious, the interest rate is computed by amortizing or spreading, using the actuarial method during the stated term of the loan, all interest at any time contracted for, charged, or received in connection with the loan." If the loan in question provides for periodic principal payments during the loan term, does computing the maximum allowable interest rate "by amortizing or spreading, using the actuarial method" require the court to base its interest calculations on the declining principal balance for each payment period, rather than the total principal amount of the loan proceeds?

No. 23-10804

*See Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 23-10804, 2024 WL 4132409, at *8 (5th Cir. Sept. 10, 2024) (per curiam). The Supreme Court of Texas answered:

> Our answer is *Yes*, because the Legislature's choice of words matters. By deliberately changing the text of Section 306.004(a) from an "equal parts" approach to the "actuarial method"—a term with a well-established meaning in financial and legal contexts—the Legislature called upon courts to calculate the maximum permissible interest based on the declining principal balance for each payment period.

*Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 24-0759, 2025 WL 1478179, at *1 (Tex. May 23, 2025). The conclusion of the opinion additionally states:

> We therefore hold that if the loan provides for periodic principal payments during the loan term, "using the actuarial method" requires courts to base their interest calculations on the declining principal balance for each payment period. Thus, the NPS Loan's total lawful interest amount is the sum of each payment period's interest amount, calculated based on the declining principal balance resulting from each of Pearl's principal payments.

*Id.*, 2025 WL 1478179, at *5 (Tex. May 23, 2025). [1]

---

[1] In June 2025, after the opinion of the Supreme Court of Texas was issued on May 23, 2025, that court received correspondence from two members of the Texas bar, who characterized their missives as amicus curaie letter briefs. Both letter briefs report the maximum lawful rate of interest for commercial loans to be less than the 28% rate referenced in § 303.009(c) of the Texas Finance Code, the parties' prior submissions, and the district court's opinions. *See* TEX. FIN. CODE ANN. § 303.009(c). Citing the letter briefs, Pearl filed a motion for rehearing, as well as an opposed motion seeking an extension of time to file a motion for rehearing, on June 23, 2025. On July 11, 2025, Supreme Court of Texas denied Pearl's motion seeking an extension of time to file a motion for rehearing and dismissed Pearl's motion for rehearing.

5

## II.

Given the answer provided to our certified question, we reverse the district court's dismissal of Pearl's usury claim regarding the NPS Loan's scheduled interest payments, vacate that aspect of the district court's judgment, and remand for further proceedings regarding that claim consistent with this opinion.

REVERSED; VACATED; REMANDED.

_____